(No. 60872.—

*In re* THOMAS ARTHUR THEBUS, Attorney, Respondent.

*Opinion filed October 3, 1985.*

Daniel Drake, of Springfield, for the Administrator of

the Attorney Registration and Disciplinary Commission.

Thomas A. Thebus, of O'Fallon, *pro se*.

JUSTICE RYAN delivered the opinion of the court:

The complaint filed by the Administrator for the Attorney Registration and Disciplinary Commission in this disciplinary proceeding charged that between April 1, 1978, and March 31, 1979, Thomas Arthur Thebus, the respondent, withheld funds from his employees' wages to pay their Federal income taxes and their contributions under the Federal Insurance Contribution Act (FICA), and failed to remit the amount withheld to the Internal Revenue Service and failed to file an employer's quarterly tax return. According to the complaint, a four-count indictment was filed against the respondent in the United States District Court for the Southern District of Illinois. Each count charged that the respondent wilfully and knowingly failed to make and file an employer's quarterly tax return in violation of title 26, United States Code, section 7203 (1976). On April 8, 1982, pursuant to a plea agreement, the respondent entered a guilty plea to one count of the indictment, and the other three counts were dismissed. The respondent, among other things, was ordered to make restitution of $7,740.40 plus interest to the Internal Revenue Service. This is the amount which the respondent had withheld from his employees' wages from April 1, 1978, to March 31, 1979, plus his share of FICA taxes for the same period. The respondent paid the Internal Revenue Service the amount ordered. The complaint alleged that the respondent's failure to remit to the Internal Revenue Service the amount withheld from his employees' wages amounted to a conversion of funds entrusted to him by his employees, and warranted disbarment.

The respondent, before the Hearing Board, the Re-

view Board, and this court, asserts that his conduct did not amount to a conversion but was simply a case of failure to file a tax return and to pay the taxes to the Internal Revenue Service. It is the Administrator's position that this is not a simple case of a taxpayer's failure to file a return and pay the tax, but amounts to a conversion of funds entrusted to the respondent.

The Hearing Board made no finding as to whether respondent's conduct was or was not a conversion, but it did specifically find that the respondent had been found guilty of violating the law with regard to the failure to file the tax return and pay the taxes, and found that the fact that the respondent had been found guilty of that offense made some discipline mandatory. The Hearing Board recommended that the respondent be censured.

The Administrator filed exceptions to the findings and recommendation of the Hearing Board and again specifically asserted before the Review Board that the respondent's conduct amounted to a conversion of funds. The Review Board, however, agreed with the findings of fact and the conclusions of the Hearing Board and recommended that the respondent be censured. Two members of the Review Board dissented and agreed with the contention of the Administrator and recommended that the respondent be suspended from the practice of law for a period of one year.

Neither the Hearing Board nor the Review Board made a specific finding that respondent's conduct did not amount to conversion. However, the Administrator argued before both bodies that the respondent's conduct constituted conversion and that this was not simply a disciplinary case involving the failure to file a tax return and to pay the taxes. Thus, this was the principal issue in the case. The failure of the Hearing Board and the Review Board to find that respondent's conduct amounted to a conversion and the specific finding that

this was a case involving a simple failure to file a tax return and pay the taxes compel us to conclude that the Hearing Board and the Review Board rejected the Administrator's contention that the respondent's failure to pay to the Internal Revenue Service the money which had been withheld from his employees' wages amounted to a conversion of funds by the respondent.

This court has, on many occasions, considered disciplinary cases in which attorneys have been charged with conversion of clients' funds and other funds entrusted to them without discussing exactly what is meant by the term "conversion" in the context of such proceedings. For purposes of attorney disciplinary proceedings, the term "conversion" may have a specialized meaning. However, the common law tort of conversion has had a long history of development, and we can look to the tort for guidance as to the essential elements and nature of conversion. Dean Prosser describes conversion as "a fascinating tort" and traces its common law development. (Prosser, Torts sec. 15, at 79-97 (4th ed. 1971).) The Restatement defines conversion as follows:

> "(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." (Restatement (Second) of Torts sec. 222A (1965).)

This court has stated that "[a] conversion is any unauthorized act, which deprives a man of his property permanently or for an indefinite time ***." (*Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.* (1895), 157 Ill. 554, 563.) In *Bender v. Consolidated Mink Ranch, Inc.* (1982), 110 Ill. App. 3d 207, 213, the court said, "The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." In *Jensen v. Chi-*

*cago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 932, it was stated: "One claiming conversion must show a tortious conversion of the chattel, a right to property in it, and a right to immediate possession which is absolute \*\*\*." In *Farns Associates, Inc. v. Sternback* (1979), 77 Ill. App. 3d 249, 252, the court said, "The essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession." In 18 Am. Jur. 2d *Conversion* sec. 9, at 164 (1965), it is stated: "It is ordinarily held, however, that an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible \*\*\*."

Common to these statements is the idea that the subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived. Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it is not necessary for purposes of identification that money should be specifically earmarked. However, an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money. (See 89 C.J.S. *Trover & Conversion* sec. 23 (1955).) In *Kerwin v. Balhatchett* (1909), 147 Ill. App. 561, 565, the court found that when the plaintiff gave the defendant money to pay certain debts of the plaintiff and to account to her for the balance the relationship of debtor and creditor was created and trover for the conversion of the funds would not lie. However, for attorney disciplinary purposes, if the person who received the money would have been an attorney, Rule 9—102 of the Code of Professional Responsibility (87 Ill. 2d R. 9—102) would require that the money be deposited in a special account and the holding of *Kerwin* might have been different. In *Addante v. Pompilio* (1940), 303 Ill. App. 172, the complaint alleged that plaintiff had deposited with the

defendant $3,000 to transmit to the plaintiff's brother in Italy. The defendant gave plaintiff a receipt for the money, but he neglected to transmit the money and afterwards appropriated it to his own use. The court held that the complaint was sufficient to state a cause of action for conversion. Also, in *Grand Pacific Hotel Co. v. Rowland* (1899), 88 Ill. App. 519, a patron gave a waiter a $500 bank note with which to pay his dinner check of $6. The waiter disappeared with the bank note. The plaintiff sued the hotel for conversion of his bank note. The court held that the plaintiff had sought the appropriate remedy. Thus the general rule is that conversion will not lie for money represented by a general debt or obligation. It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use. (See *Property—Subject To Conversion,* Annot., 44 A.L.R.2d 927, 942-43 (1955).) These general rules as to the elements of the tort of conversion may not fit neatly into the mold of the special relationship between an attorney and his client and, as indicated above in the comment concerning the appellate court's decision in *Kerwin,* may be altered by the requirements of the Code of Professional Responsibility.

In conjunction with the essentials of conversion, it is necessary to consider the nature of the money withheld from wages by the employer and the effect of such withholding. In *United States Fidelity & Guaranty Co. v. United States* (10th Cir. 1952), 201 F.2d 118, an employer on a construction project withheld taxes from the employees but failed to remit the amount withheld to the Federal government. The court held that when the employer withholds taxes from wages and pays the balance to the employee, the employee has been paid in full and is entitled to a credit or refund of this tax even though the employer has not paid it over to the Federal govern-

ment. The employer is liable to the Federal government for the amount of the tax. That is a tax liability for which the employer alone is liable to the government as for any other taxes he may owe. Thus in our case the employees have no interest in the money the respondent withheld from their wages, so there has been no conversion of employees' funds.

Although the respondent was under an obligation to remit to the Internal Revenue Service the amount of money withheld as taxes, this obligation is in the nature of a debt to the government. The amount withheld is not a specified identifiable fund capable of being the subject of a conversion. Section 7501 of the Internal Revenue Code (26 U.S.C. sec. 7501 (1976)) provides that when a person is required to collect or withhold any internal revenue tax from another person and pay it over to the government, the amount of the tax shall be held to be a special fund in trust for the United States. Although this statute speaks in terms of a special fund in trust, there is no requirement that the withheld sums be segregated from the employer's general funds or that they be deposited in a special bank account. However, once the employer has been inexcusably delinquent in making payments, the Internal Revenue Service, after notice, may require the employer to deposit the taxes withheld in a special bank trust account. (*Slodov v. United States* (1978), 436 U.S. 238, 243-44, 56 L. Ed. 2d 251, 259, 98 S. Ct. 1778, 1783.) Sections 7512(a) and (b) (26 U.S.C. secs. 7512(a), 7512(b) (1976)) provide that if a person who is required to collect and pay over taxes fails to do so under the conditions mentioned in *Slodov*, then that person may be required to deposit the withheld or collected taxes in a separate account in a bank until payment over to United States. Section 7512(c) (26 U.S.C. sec. 7512(c) (1976)) also provides that this requirement of a deposit in a special bank account may be lifted when

the appropriate official is satisfied that the requirements of the law and regulations will henceforth be complied with.

The respondent in our case did not maintain a separate bank account in which the taxes withheld and owed to the Internal Revenue Service were deposited. Likewise, he did not maintain a separate payroll account. Thus, respondent held no identifiable sum of money or fund for the Internal Revenue Service. The money owed to the government did not come into respondent's hands from any outside source. It was an amount that accrued with each pay period as the respondent wrote the payroll checks from his general checking account for the net amount of wages after taxes, retaining in his checking account the difference between the gross wages and the amount of the check.

The Administrator's original position as alleged in the complaint was that the respondent held the taxes that had been withheld in trust for his employees and that he converted funds entrusted to him by his employees. As noted above, the employees had no interest in the money withheld from their wages. In the reply brief in this court the Administrator now contends that the respondent held the money in trust for the government, citing section 7501 of the Internal Revenue Code. However, as the Supreme Court held in *Slodov*, section 7501, by itself, does not require that the tax money be segregated from the employee's general funds or that it be deposited in a separate bank account, and the respondent in our case did not segregate the taxes owed to the Internal Revenue Service. We essentially have a question of fact as to whether there was in this case a fund of money capable of being the subject of a conversion, and whether there in fact was a conversion. The Hearing Board and the Review Board rejected the Administrator's contention that the respondent's conduct consti-

tuted conversion. Although the authority to impose discipline on attorneys rests with this court, the findings of the Hearing Board and the Review Board are entitled to virtually the same weight as those of any initial trier of fact. *In re Wigoda* (1979), 77 Ill. 2d 154, 158.

The respondent may have wrongfully failed to pay the taxes. He may have used money in his general checking account for other purposes when it should have been used to pay the taxes owed to the Internal Revenue Service, but the Administrator has not shown by clear and convincing evidence that the respondent's conduct constituted a conversion of government funds.

A typical, although not necessarily exclusive, type of conversion by an attorney which warrants discipline involves the conversion of funds that have been deposited or received by an attorney for a specific purpose or for the use of another. Rule 9—102 of our Code for Professional Responsibility requires that all funds of clients paid to an attorney be deposited in one or more separate, identifiable trust accounts in a bank or savings and loan association. (87 Ill. 2d R. 9—102.) As noted above, in our case no funds were deposited with respondent for the payment of taxes. He simply wrote checks to the employees for their net wages from his general account, and the amount of the tax was retained by the respondent in his general checking account. This is not a case in which Rule 9—102 requires the attorney to deposit the money involved in a separate fund.

Although we do not agree with the Administrator's contention that the respondent converted funds, we find that he should be disciplined based on his conviction for the wilful failure to file an employer's quarterly tax return. In *In re O'Hallaren* (1976), 64 Ill. 2d 426, respondent was convicted of wilfully failing to file an income tax return. The court held that proof of respondent's conviction, while not necessarily establishing moral turpitude,

conclusively established misconduct constituting grounds for discipline in the absence of mitigating circumstances of an extraordinary nature. See also *In re Towles* (1983), 98 Ill. 2d 179.

We therefore find that the sanction of censure recommended by the Hearing Board and the majority of the Review Board is appropriate in this case for the respondent's failure to file his tax return and pay the taxes.

*Respondent censured.*