No. 2--03--0259 

______________________________________________
________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

BILL MAREK'S THE COMPETITIVE ) Appeal from the Circuit

EDGE,
 INC., ) Court of Du Page County.

)

Plaintiff-Appellee, )

)

v. ) No. 00--L--446

)

MICKELSON GROUP, INC., ) Honorable

) Patrick J. Leston,

Defendant-Appellant. ) 
Judge, Presiding.

_______________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Union Underwear Company, Inc.(Union), which is not a party to this appeal, purportedly owed 
plaintiff
, 
Bill Marek's The Competitive Edge, Inc., 
unpaid sales commissions but mistakenly paid them to 
defendant
, Mickelson Group, Inc.  Plaintiff made numerous demands upon 
defendant
 for 
the
 immediate transfer 
of the
 funds to 
plaintiff
, the funds totaling $65,008.99, and 
defendant
 refused.  
Thereafter, plaintiff filed a two-count complaint against 
defendant
 
based on 
the
 claims of conversion and constructive trust.
 
 The trial court granted 
plaintiff
's motion for summary judgment on 
the
 conversion count for $65,008.99, plus interest.  
Defendant contends on appeal that 
the
 trial court (1) erred in granting summary judgment 
for 
plaintiff on 
the
 conversion claim
; (2) abused its discretion by imposing discovery sanctions against 
defendant
; (3) abused its discretion by failing to strike 
plaintiff's supporting affidavits; 
and (4) erred in denying 
defendant
's motions to dismiss for lack of jurisdiction and for failure to join Union as a necessary party.  
We affirm.

The following facts are taken from 
the
 complaint as well as 
the
 supporting documents and affidavits.  On January 6, 1997, 
plaintiff
 entered into a sales representative agreement with Union.  Plaintiff remained a sales representative for Union until its contract was terminated by letter on May 5, 1999.  The original sales agreement between 
plaintiff
 and Union and 
the
 notice of termination letter provided that 
plaintiff
 was to receive commission payments on orders taken, submitted, and shipped within six months after 
the
 effective date of 
the
 termination, 
i.e.
 from
 the
 effective date of May 5, 1999, through December 5, 1999. 

Defendant became 
Union's
 successor sales representative after 
the
 relationship between 
plaintiff
 and Union ended.  Due to an administrative error, Union sent 
plaintiff
's commission payments,
 totaling
 $65,008.99, to 
defendant
.

On November 24, 1999, Union and 
plaintiff
 discovered that 
plaintiff
's earned commissions  were mistakenly sent to 
defendant
.  Union acknowledged in writing to 
plaintiff
 that it sent 
plaintiff
's commission payments to 
the
 wrong agency and documented 
the
 nature of 
the
 error in two reports, dated December 21 and December 22, 1999.  The reports, which were referenced in a spread sheet as group “Exhibit E,” were attached to 
plaintiff
's complaint.  Exhibit E was later attached to 
plaintiff
's motion for summary judgment.  

Plaintiff  then verbally demanded that 
defendant
 transfer 
the
 funds to 
plaintiff
.  Defendant failed to transfer 
the
 funds as demanded.  Defendant admitted that it is 
the
 successor sales representative for Union; that it received copies of 
the
 Union reports dated December 21 and 22, 1999, which documented 
the
 nature of 
the
 error in payment; and that 
plaintiff
 made numerous verbal demands for 
the
 transfer of 
the
 funds identified in 
the
 complaint.

On December 29, 1999, Union filed for bankruptcy.  Plaintiff received a creditor's notice.  On April 11, 2000, 
plaintiff
 prepared a claim for bankruptcy court that sought, 
inter
 
alia
, unpaid commissions from Union.

Thereafter, on May 4, 2000, plaintiff filed 
the
 instant complaint to collect its unpaid  commissions that Union mistakenly paid to 
defendant
.  In count I, the conversion count, plaintiff alleged that 
defendant
 had no claim or right to 
plaintiff's
 sales commissions and 
defendant
 wrongfully assumed control, dominion, and ownership over 
these funds
.  Plaintiff alleged that the orders identified in 
Exhibit E 
were taken by 
plaintiff
 and submitted to Union for approval on or before June 5, 1999, and 
the
 products identified in Exhibit E were shipped on or before December 5, 1999.  Plaintiff further alleged that there were no deductions taken against 
plaintiff
's account and 
the
 commissions identified in 
Exhibit E 
are 
plaintiff
's property.  Plaintiff alleged that defendant was paid 
the
 sum of $65,008.99, which represents 
the
 total commissions that were and are due and owing to 
plaintiff
.  Plaintiff further alleged that 
defendant
 did not take, submit, or ship any of 
the
 orders identified in Exhibit E.

On June 14, 2000, defendant filed its answer and affirmative defenses to count I.  On August 2, 2000, 
plaintiff
 filed a motion to dismiss 
defendant'
s affirmative defenses.  Thereafter, 
defendant
 filed a motion to amend its answer and affirmative defenses.  The trial court granted 
defendant'
s motion and ordered 
that the
 case be continued for a case management conference on October 23, 2000.

On October 23, 2000, 
the
 trial court granted 
defendant
's motion for an extension of time.  The trial court also ordered that written discovery be completed by December 22, 2000, that oral discovery be completed by March 23, 2001, and that 
the
 cause be heard for a pretrial conference on April 6, 2001.
  D
efendant
 filed its first amended answer and one affirmative defense.

Defendant's affirmative defense stated that 
the
 prior sales agreement between Union and 
plaintiff
 provided that commissions could not and would not be paid on bulk projections but, rather, on purchase orders identified by purchase order numbers that had been issued by 
the
 customer and on products shipped to 
the
 customer.  Plaintiff denied 
the
 affirmative defense.

Plaintiff issued interrogatories, including Supreme Court Rules 213(f) and (g) interrogatories (177 
Ill. 2d
 Rs. 213(f), (g)), on December 19, 2000.  Defendant did not issue any interrogatories to 
plaintiff
.  Although 
the
 record does not contain a corresponding notice of written discovery, 
defendant
 did propound a Supreme Court Rule 214 (166 
Ill. 2d
 R. 214) notice to produce to 
plaintiff,
 and 
plaintiff
 provided responsive documents to 
defendant
.

On February 22, 2001, 
defendant
 answered 
plaintiff
's Rules 213(f) and (g) interrogatories.  Interrogatory number one called for 
the
 names and addresses of all witnesses who would testify at trial and requested 
the
 identification of 
the
 subject or subjects of 
the
 testimony of each witness.  Defendant did not identify any subject matter.  Interrogatory number two asked for 
the
 identification of the name and address of each opinion witnesses who would testify at trial and asked 
that the
 subject matter, 
the
 conclusions and opinions, and 
the
 qualifications of each such witness be identified.  Defendant answered: "None, investigation continues."  Interrogatory number six asked for 
the
 identification of each and every person who 
defendant
 believed was of 
the
 opinion that 
defendant
 properly received or was entitled to retain 
the
 commissions.  Defendant stated, "Tim Kenney, address unknown, investigation continues."  Timothy Kenney is 
an affiant for 
plaintiff
 and the
 author of 
Exhibit E
.

On April 13, 2001, 
the
 trial court heard
 
the
 matter for a case management conference.  The trial court closed discovery as of August 3, and set a pretrial hearing for August 10, 
 2001.  At 
the
 pretrial hearing,
 
the
 trial court closed discovery and ordered that 
the
 case be heard for trial on January 7, 2002.  

Thereafter, 
the
 parties agreed to present 
the
 conversion count to 
the
 trial court on cross-motions for summary judgment.  Accordingly, on December 28, 2001, 
plaintiff
 filed an agreed motion for hearing on partial summary judgment.  The motion stated that 
the
 parties were prepared to file their motions for summary judgment 
instanter
.  The trial court granted 
the
 motion and ordered the parties to file their cross-motions for summary judgment by January 4, 2002, and to respond to 
the
 cross-motions by January 30, 2002.  The trial court further ordered that 
the
 cross-motions for summary judgment be heard on February 27, 2002, and struck the trial date of January 7, 2002.

Plaintiff timely filed its motion for summary judgment.  Defendant did not file a cross-motion for summary judgment.  Instead, on January 28, 2002, 
defendant
 filed a motion for judgment on 
the
 pleadings, 
a
 motion to dismiss for lack of jurisdiction, and a motion to dismiss for 
plaintiff
's failure to join Union as a necessary party.  Defendant also filed a motion to strike in lieu of a response to 
plaintiff
 's motion for summary judgment.  

On February 15, 2002, 
plaintiff
 received 
defendant
's supplemental answers to 
plaintiff's 
Rules 213(f) and (g) 
interrogatories.  On February 19, 
plaintiff
 filed a motion to strike 
defendant
's supplemental answers.  When 
the
 briefing schedules were set with respect to 
plaintiff
's motion to strike, counsel for 
defendant
 stated to 
the
 court that "the light went on after [he] received 
plaintiff
's motion for summary judgment" and that counsel thereafter conducted his own discovery that led to 
the
 development of 
the
 supplemental answers.  The trial court found that 
defendant
's supplemental answers were not timely disclosed and granted 
plaintiff
's motion to strike.

After 
the
 trial court denied 
defendant
's motion to strike in lieu of a response to 
plaintiff
's motion for summary judgment, 
defendant
 asserted that it had never directly responded to 
the
 summary judgment motion, and it sought leave to file a direct response.  Defendant assumed that 
the
 motion for summary judgment would be "muted" by its other motions and therefore never directly responded to 
the
 summary judgment motion.  The trial court allowed 
defendant
 to file a response. 

On August 28, 2002, 
defendant
 filed a response to 
the
 motion for summary judgment.  Attached to 
defendant
's response were 
the
 counteraffidavits of Douglas Kelly, Daniel Raskin, and James Gilberto.  Plaintiff filed a motion to strike 
the
 affidavits.  The trial court granted the motion to strike on 
the
 basis of 
defendant
's failure to timely answer 
plaintiff
's Rules 213(f) and (g) interrogatories.

Following oral argument on 
the
 summary judgment motion as to 
the
 conversion count, 
the
 trial court entered judgment in favor of 
plaintiff
 in 
the
 amount of $65,008.99, plus interest.  Because 
the
 constructive trust count requested 
the
 same relief as 
the
 conversion count, 
the
 trial court found it unnecessary to impose a constructive trust.  See 
Fujisawa Pharmaceutical Co. v. Kapoor
, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998) (under Illinois law, a c
onstructive trust describes an equitable remedy
, rather than a separate cause of action). 
 Defendant timely appeals.

We first examine whether 
the
 trial court erred in granting summary judgment for 
plaintiff
 on 
the
 conversion count.  Summary judgment is properly granted where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2002).  We review 
de
 
novo
 an order granting summary judgment.  
City of Chicago v. Holland
, 206 Ill. 2d 480, 487 (2003).

Conversion is " 'any unauthorized act, which deprives a man of his property permanently or for an indefinite time.' "  
In re Thebus
, 108 
Ill. 2d
 255, 259 (1985), quoting 
Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.
, 157 Ill. 554, 563 (1895).  The substance of conversion is " 'the wrongful deprivation of one who has a right to 
the
 immediate possession of 
the
 object unlawfully held.' "  
Thebus
, 108 
Ill. 2d
 at 259, quoting 
Bender v. Consolidated Mink Ranch,
 
Inc.
, 110 
Ill. App. 3d
 207, 213 (1982).  Accordingly, to prove 
conversion, the
 
plaintiff
 must prove 
the
 following elements by a preponderance of 
the
 evidence: (1) 
the
 
defendant
's unauthorized and wrongful assumption of control, dominion, or ownership over 
the
 
plaintiff
's personal property; (2) 
the
 
plaintiff
's right in 
the
 property; (3) 
the
 
plaintiff
's right to immediate possession of 
the
 property, absolutely and unconditionally; and (4) 
the
 
plaintiff
's demand for possession of 
the
 property.  
Stathis v. Geldermann
, 295 
Ill. App. 3d
 844, 856 (1998).  

Defendant 
asserts that unpaid sales commissions cannot form 
the
 basis for a claim of conversion.  
Defendant contends that, as a matter of law, an action for conversion may not be maintained for a mere failure to pay money unless it is capable of being described as a specific chattel.  See 
Fonda v. General Casualty Co. of Illinois
, 279 
Ill. App. 3d
 894, 899 (1996).  We disagree.

It is no longer necessary that money be specifically earmarked in order to sustain an action for conversion.  An action for conversion may also be maintained where 
the
 converted funds are capable of being described, identified, or segregated in a specific manner
.  See 
Thebus
, 108 
Ill. 2d
 at 260-62; 
Roderick Development Investment Co.,  Inc. v. Community Bank of Edgewater
, 282 
Ill. App. 3d
 1052, 1058 (1996); 
Fonda v. General Casualty Co.
, 279 
Ill. App. 3d
 894, 899 (1996) 
(insurance proceeds of $20,091.70 sufficiently identifiable to support conversion action)
; 
Addante v. Pompilio
, 303 Ill. App. 172 (1940) 
(
$3,000 
transmitted to brother sufficiently identifiable to support conversion action).
  
A right to an indeterminate sum is insufficient to maintain a cause of action in conversion.  See, 
e.g.
, 
Mid-America Fire & Marine Insurance Co. v. Middleton
, 127 
Ill. App. 3d
 887, 892 (1984).

In 
Thebus
, 
108 
Ill. 2d
 at 264, the
 supreme court held that an attorney had not converted funds he withheld from his employees' paychecks by failing to pay this money to 
the
 Internal Revenue Service.  The court explained that, although a specified identifiable fund could be 
the
 subject of a conversion action, there could be no conversion action for money represented by a general debt or obligation.  The court decided that 
the
 character of 
the
 funds 
the
 attorney withheld for taxes was in 
the
 nature of a debt to 
the
 government rather than an identifiable fund, and 
the
 attorney did not maintain a separate bank account in which 
the
 taxes withheld and owed to 
the
 Internal Revenue Service were deposited.  Similarly, he did not maintain a separate payroll account.  Therefore, 
the
 attorney held no identifiable sum of money or fund for 
the
 Internal Revenue Service.  The money owed to 
the
 government did not come into 
the
 attorney's hands from any outside source.  It was an amount that accrued with each period as he wrote 
the
 payroll checks from his general checking account for 
the
 net amount of wages after taxes, retaining in his checking account 
the
 difference between 
the
 gross wages and 
the
 amount of 
the
 checks.  
Thebus
, 108 
Ill. 2d
 at 263.

Unlike 
the
 funds at issue in 
Thebus
, 
the
 funds here were specifically identifiable.  The amount 
plaintiff
 claims 
defendant
 exercised control over was specifically identifiable given 
the
 sales agreement between 
plaintiff and Union
, 
the
 notice of termination letter, 
the
 orders identified in Exhibit E, which were taken, submitted, and shipped within six months after 
the
 effective date of termination, and 
the
 affidavits attached to 
the
 motion for summary judgment.  The exact sales identified in Exhibit E show 
that the
 earned commissions amounted to $65,008.99.  In particular, 
the
 affidavit of Timothy Kenney, 
Union's
 customer service manager and the author of Exhibit E, stated that 
the
 commissions generated in 
Exhibit E
 were based on 
the
 orders generated by 
plaintiff
 and accurately reflected 
the
 business records and computer data that Union maintained.  Kenny averred that 
the
 orders identified in 
Exhibit E 
amounted to $65,008.99, representing 
the
 commissions which were due and owing to 
plaintiff
.  

Further, unlike 
the
 amount allegedly converted in 
Thebus
, 
the
 amount 
defendant
 converted in this case was not a portion of its own assets that 
defendant
 was obligated to use to satisfy a debt to 
plaintiff
.  Rather, 
the
 funds were 
the
 specific funds transferred to 
defendant
 from an outside source, Union.  Therefore, 
the
 funds also were identifiable 
in this respect
. 

We also find 
Roderick Development Investment Co., Inc. v. Community Bank of Edgewater
, 282 
Ill. App. 3d
 1052 (1996), particularly instructive.  Similar to 
the
 argument presented here, 
the
 defendant
 in 
Roderick
 argued in defense of 
the
 conversion claim that 
the 
action involved money that was not specifically identifiable or in a separate account.  
In rejecting this argument, 
the
 
Roderick
 court pointed out that 
the
 amount 
the
 
plaintiff
 claimed 
the
 
defendant
 converted did not accrue but was specific and identifiable; it was exactly 5% of 
the
 final payment that was due under 
the
 purchase agreement, which was paid in a lump sum. 
 The court further noted that the money was identifiable because it was a specific amount transferred from an outside source.  
Roderick
, 282 
Ill. App. 3d
 at 1059. 

The 
Roderick
 court also rejected 
the
 defendant's
 argument that 
the
 amount claimed by 
the
 
plaintiff
 was not identifiable because it was not segregated or kept in a separate account.  
Roderick
, 282 
Ill. App. 3d 
 at 1062-63.  
The court explained that, where 
the
 allegedly converted funds come from an outside source, 
the
 failure to segregate the funds does not make them unidentifiable.  The court stated that it would be unfair to fashion a rule that prohibits a conversion action for funds that are not segregated.  "Such a rule gives 
the
 alleged converter control over whether certain funds are subject to conversion because, depending on 
the
 type of account in which he chooses to place 
the
 funds, 
the
 funds may or may not be considered identifiable and, therefore, may or may not be subject to conversion.  A party, such as 
the
 
plaintiff
, with no contractual relationship with 
the
 alleged converter could not dictate 
the
 manner in which 
the
 funds were held."  
Roderick
, 282 
Ill. App. 3d 
 at 1063; see also 
Greene County Board of Education v. Bailey
, 586 So. 2d 893, 898 (Ala. 1991) (requirement that there be earmarked money or specific money capable of identification before there can be a conversion has been complicated as a result of 
the
 evolution of our economic system); 
Autoville, Inc. v. Friedman
, 20 Ariz. App. 89, 91, 510 P.2d 400, 402 (1973) (converted funds must be described, identified, or segregated in a specific manner).  We 
are persuaded by 
the 
Roderick
 court's 
reasoning
. 

Defendant argues that 
the
 relationship between 
defendant
 and 
plaintiff
 is one of debtor-creditor
,
 and therefore, a conversion action is inappropriate.  C
ontrary to 
defendant's
 argument
, the
 relationship between 
defendant and plaintiff
 is not one of debtor and creditor.  In 
General Motors Corp. v. Douglass
, 206 Ill. App. 3d 881 (1990), for example, 
the
 court held that a conversion action was not appropriate because 
the
 relationship between 
the
 
plaintiff
 and 
the
 
defendant
 was represented by a general debtor obligation.  General Motors maintained a "holdback" account for its dealers from which it made periodic payments.  It mistakenly paid one of its dealers, 
the
 
defendant
, $37,364.36, although it owed 
the
 
defendant
 only $12,836.88.  The 
defendant
 refused to return 
the
 amount General Motors had overpaid it.  
General Motors
, 206 
Ill. App. 3d
 at 883.  
As explained in 
General Motors
, 206 
Ill. App. 3d
 at 888, a debtor-creditor relationship is created when a party (the creditor) 
voluntarily
 transfers his property to another (the debtor).  See also 
Fonda
, 279 
Ill. App. 3d
 at 901. 
 Because General Motors had created a debtor-creditor relationship with 
the
 
defendant
 when it voluntarily transferred money to 
the
 
defendant,
 the court held that there could be no conversion
.  
General Motors
, 206 
Ill. App. 3d
 at 891-92.  Similarly, in 
Thebus
, 
the
 government became a creditor of 
the
 attorney by allowing 
the
 
attorney
 to collect withholding taxes for it.  See also 
Katz v. Belmont National Bank of Chicago
, 112 
Ill. 2d
 64 (1986) (third party's action in depositing 
plaintiff
's funds into 
defendant
 bank created a lawful creditor-debtor relationship between 
third party
 and bank so that legal title passed to bank and therefore 
plaintiff
 could not bring conversion action against bank).

Here, by contrast, 
there was no creditor-debtor relationship between 
plaintiff
 and 
defendant
.  Plaintiff
 never voluntarily transferred funds to 
defendant
.  Rather, 
defendant
 mistakenly received 
plaintiff
's funds from a third party.  The funds were not a debt and, therefore, 
were 
subject to conversion. 

D
efendant further argues that, once it
 received 
the
 money from Union, it never committed an act of conversion.  
The uncontroverted evidence shows that 
plaintiff
 was due a percentage of 
the
 sales commissions, which were earned before 
Union fired plaintiff,
 in 
the
 amount of $65,008.89; that this amount represents 
the
 property of 
plaintiff
; that there were no deductions or setoffs against 
plaintiff
's account; and that 
the
 amount of 
the
 commissions identified represents 
the
 total amount paid to 
defendant
.  It is further undisputed that 
plaintiff
 made a demand for its unpaid sales commissions that were mistakenly paid to 
defendant, and 
defendant
 refused to pay 
the
 amount to 
plaintiff
.
  Once 
plaintiff
 made 
the
 demand to transfer 
its 
property and 
defendant
 refused to do so, 
defendant
 committed an act of conversion. 

We next address whether 
the
 trial court abused its discretion by imposing discovery sanctions against defendant.  Defendant asserts that 
the
 trial court abused its discretion in striking its proposed supplemental answers to plaintiff's Supreme Court Rules 213(f) and (g) interrogatories (177 
Ill. 2d
 Rs. 213 (f), (g)), and barring defendant from presenting any witnesses as a sanction pursuant to Supreme Court Rule 219 (166 
Ill. 2d
 R. 219).  
We note that defendant's arguments rely on revised Supreme Court Rule 213, which became effective July 1, 2002.  However, because discovery closed on August 3, 2001, 
the
 previous rule governs this analysis.  See Official Reports Advance Sheet No. 8 (April 17, 2002), Rs. 213(f), (g), eff. July 1, 2002.

Supreme Court Rule 213(f) provides that "[u]pon written interrogatory, a party must furnish 
the
 identity and location of witnesses who will testify at trial, together with 
the
 subject of their testimony."  177 
Ill. 2d
 R. 213(f).  Rule 213(i) imposes on a party 
the
 continuing duty to supplement discovery responses, including 
the
 disclosure of witnesses and proposed testimony, "whenever new or additional information subsequently becomes known to that party."  177 
Ill. 2d
 
 R. 213(i).  Under 
the
 rules, to avoid surprise, a party has 
the
 obligation of disclosing 
the
 identity, location, and anticipated testimony of all witnesses who will testify at trial.  
Athans v. Williams
, 327 
Ill. App. 3d
 700, 702 (2002).

Defendant supplemented 
its responses to plaintiff's interrogatories o
n February 15, 2002, after discovery had closed and after 
plaintiff
 had filed its motion for summary judgment. 
 D
efendant
 stated the names of Peter Lewis, Doug Kelly, James Gilberto, Frank Novelli, Bette Nelson, Hugh Hoffman, and Daniel Raskin as witnesses 
whom defendant
 intended to call at trial and stated the subject of their testimony as follows.
  Defendant did not list 
Lewis'
s qualifications.  Defendant stated only
 that 
Lewis would acknowledge 
the
 oral agreement between 
defendant
 and Pro Player Sports Apparel Company, a subsidiary of Union.  Defendant stated that Doug Kelly, 
the
 president of Pro Player, was aware of 
the
 payment issues between 
plaintiff
 and 
defendant
 in December 1999
.  Kelly was also fully knowledgeable about 
the
 reports used in Pro Player's commission statements, as well as 
the
 definition of a "Bulk Order" and a "Confirmed Purchase Order."  Based on his knowledge, position, and background, Kelly believed that 
the
 commissions on 
the
 sales identified in Exhibit E were earned by and payable to 
defendant
. 
 Defendant did not list Gilberto's qualifications.  Defendant stated that Gilberto's testimony would confirm that 
plaintiff
's
 bulk orders were nonbinding because they were routinely changed, canceled, or reworked.  Gilberto would also state 
that defendant's orders were
 confirmed purchase orders for 
the
 several accounts within its territory, and that 
the
 commissions from these orders 
ultimately
 belonged to 
defendant, not 
plaintiff
.  Raskin, 
the
 vice president of sales for Pro Player, hired 
defendant
 to replace 
plaintiff
 and would testify to 
the
 particulars of 
the
 relationship between 
defendant
 and Pro Player.  Hoffman, an independent sales contractor who entered into an agreement with 
defendant
 on June 6, 1999, for services as a key account salesman for Kohl's Department Stores, would testify that due to a buyer change at Kohl's after 
the
 first week in June 1999, many of 
the
 bulk orders that 
plaintiff
 initially entered were completely changed and reentered by 
defendant
 due to 
the
 new buyer's product selection on those bulk orders.  Hoffman worked with Nelson, who was his customer service associate.  Nelson would confirm Hoffman's testimony.

Here, neither 
the
 identity of 
the
 witnesses nor 
the
 subject matter of their testimony was timely disclosed.  
Moreover, these disclosures were issued without leave of court.  Defendant did not file a motion for leave to supplement its answers.  Nor did defendant file a motion to extend or reopen discovery or file a motion to modify 
the
 briefing schedule set on 
the
 original cross-motions for summary judgment.  
Instead, after 
defendant
 received 
plaintiff
's summary judgment motion, 
defendant
 undertook 
ex
 
parte
 discovery. 

Supreme Court Rule 219 specifies 
the
 consequences for a litigant's refusal to comply with 
the
 rules or court orders regarding discovery.  166 
Ill. 2d
 R. 219.  Supreme Court Rule 219(c) empowers 
the
 trial court to enter sanctions, including barring witnesses from testifying, for a party's unreasonable failure to comply with 
the
 rules or court orders regarding discovery.  166 
Ill. 2d
 R. 219(c)(iv).  The imposition of sanctions for 
the
 failure to comply with discovery lies in 
the
 trial court's discretion.  
Athans
, 327 
Ill. App. 3d
 at 703.  The trial court's decision in fashioning such a remedy will not be reversed absent a clear abuse of discretion.  
Athans
, 327 
Ill. App. 3d
 at 703. 

In determining whether 
the
 exclusion of a witness was a proper sanction for nondisclosure pursuant to Rule 213(f) or (g), 
the
 court must consider 
the
 following factors: (1) 
the
 surprise to 
the
 adverse party; (2) 
the
 prejudicial effect of 
the
 testimony; (3) 
the
 nature of 
the
 testimony; (4) 
the
 diligence of 
the
 adverse party; (5) 
the
 timely objection to 
the
 testimony; and (6) 
the
 good faith of 
the
 party calling 
the
 witness.  
Boatmen's National Bank of Belleville v. Martin
, 155 
Ill. 2d
 305, 314 (1993).

In this case, 
defendant
 was obligated to provide 
the
 names of 
the
 trial witnesses and the subjects of their testimony in advance of trial so that 
plaintiff
 was apprised of defendant's position and 
the
 facts 
defendant
 intended to rely on in its defense.  After the trial date, defendant disclosed new information that changed 
the
 entire defense.  The disclosure substantially changed 
defendant's
 original answers to 
plaintiff
's interrogatories, which stated that Kenney was 
the
 only person of 
the
 opinion that 
defendant
 had a right to retain 
the
 commissions identified in 
the
 complaint.  Plaintiff relied upon 
defendant
's original disclosure and proceeded to trial, and ultimately summary judgment, on 
the
 basis that Kenney was 
the
 uncontroverted and critical witness in 
the
 case.  For 
defendant
 to change this posture after agreeing to decide 
the
 case at 
the
 summary judgment stage was clearly a surprise and prejudicial to 
plaintiff
.

We further find 
that defendant
's failure to seasonably supplement its responses to 
the
 interrogatories prior to trial demonstrates a lack of diligence.  Defendant had 
ample
 time and opportunity to investigate 
the
 matter through discovery.  There is no indication in 
the
 record that these witnesses could not have been located or otherwise previously deposed.  Defendant did not offer any reasonable excuse for its delay in locating them or disclosing the information.  Other than stating that defense counsel conducted his own discovery after he received 
plaintiff
's summary judgment motion and "the light went on," 
defendant
 offers no explanation for supplementing 
the
 interrogatories beyond 
the
 date set for trial.  Accordingly, we cannot say that 
the
 trial court abused its discretion in striking 
the
 answers and barring 
the
 witnesses from testifying 
as a sanction pursuant to Rule 219
.

Defendant contends that 
the
 trial court abused its discretion by striking its affidavits.  On August 28, 2002, more than a year after all discovery closed and 
eight months after 
the
 trial date, defendant
 offered the affidavits of Doug Kelly, Dan Raskin, and James Gilberto.   Our review of 
the
 affidavits shows that they substantially mimic the statements and opinions contained in 
the
 supplemental answers to 
the
 interrogatories that 
the
 trial court struck 
as a sanction pursuant to Rule 219
.  For 
the
 same reasons as above, we find that 
the
 trial court did not abuse its discretion in striking 
the
 affidavits. 

Defendant asserts that its affidavits are acceptable because 
the
 trial date was stricken.  
The trial date was vacated so that 
the
 trial court could hear count I on 
the
 cross-motions for summary judgment.  Defendant apparently chose not to file a cross-motion for summary judgment.  However, the record does not reflect that trial was continued to permit further discovery.  The practice of continuing trial for parties to depose an undisclosed opinion witness should not be, and is not, looked upon favorably.  
Warrender v. Millsop
, 304 
Ill. App. 3d
 260, 267 (1999).
  Accordingly, we reject 
defendant
's argument.

We next address whether 
the
 trial court abused its discretion in denying 
defendant
's motion to strike 
plaintiff
's affidavits for failing to comply with Supreme Court Rule 191(a) (145 
Ill. 2d
 R.191(a)).  Rule 191(a) provides that affidavits "shall be made on 
the
 personal knowledge of 
the
 affiants; shall set forth with particularity 
the
 facts upon which 
the
 claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which 
the
 affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that 
the
 affiant, if sworn as a witness, can testify competently thereto."  145 
Ill. 2d
 R. 191(a).  The rule further provides that "[i]f all of 
the
 facts to be shown are not within 
the
 personal knowledge of one person, two or more affidavits shall be used."  145 
Ill. 2d
 R. 191(a).  The granting or denying of a motion to strike a summary judgment affidavit is within 
the
 sound discretion of 
the
 trial court.  
Lake County Trust Co. v. Two Bar B, Inc.
, 238 
Ill. App. 3d
 589, 599 (1992).

Defendant argues that 
plaintiff
's
 affidavits do not support 
the
 motion for summary judgment because they are replete with personal opinions and hearsay, the affiants have no personal knowledge of 
the
 terms of 
the
 agreement 
between 
defendant
 and Union, and the affiants are not competent to speak on behalf of Union
.  We disagree.

Plaintiff presented 
the
 affidavits of Bill Marek, Mark Appleman, Peter Lewis, and Timothy Kenney in support of its motion for summary judgment.  
The 
affidavits, when read in their entirety, contain 
the
 relevant facts to support 
Exhibit 
E 
and 
plaintiff
's
 motion for summary judgment. 
 Bill Marek is 
the
 principal for 
plaintiff
.  Mark Appleman was 
the
 national sales manager for Union.  Peter Lewis was 
the
 key account sales manager for Kohl's, Sears, and Wards, and Timothy Kenney was 
the
 customer service manager for Union who authored 
the
 two reports for Union, commonly referenced as Exhibit E.

Exhibit E was authenticated by 
the
 affidavits as true, accurate, and maintained in 
the
 normal course of business.  Each witness stated that he was familiar with 
the
 exhibit and that it was 
the
 type of report that he normally relied upon in his capacity as an employee or manager for Union.  The commissions from sales that were generated by 
plaintiff
 during 
the
 relevant time period were identified in Exhibit E as earned by 
plaintiff,
 but were 
incorrectly paid to 
defendant by Union
.  As such, their affidavits complied with Rule 191, and we cannot say that 
the
 trial court abused its discretion in finding them to be
 admissible. 

Finally, 
we examine whether 
the
 
case should have been dismissed for lack of jurisdiction and failure to join a necessary party.  Defendant asserts that 
the
 trial court could not determine 
the
 value of 
plaintiff
's services to Union without Union's presence.  
Defendant further contends that 
the
 court was without jurisdiction because all matters against Union had to be brought in 
the
 bankruptcy court under 
the
 principle of federal preemption.
  Defendant asserts that 
plaintiff
's status as a creditor in 
the
 Union bankruptcy means that 
plaintiff should protect the
 interests of Union.  Defendant implies that 
plaintiff
's claim against 
the
 bankrupt entity bars 
plaintiff
 from prevailing on its claim for conversion.

Illinois law provides that a necessary party is one who has a legal or beneficial interest in 
the
 subject matter of 
the
 litigation and will be affected by 
the
 action of 
the
 court.  
Holzer v. Motorola Lighting, Inc.
, 295 
Ill. App. 3d
 963, 970 (1998)
.  Case law has analyzed 
the
 concept of a necessary party in terms of 
the
 reasons such parties must be joined, such that a lawsuit ought not proceed in a party's absence: (1) to protect an interest that 
the
 absentee has in 
the
 subject matter of 
the
 controversy that would be materially affected by a judgment entered in its absence; (2) to protect 
the
 interests of those who are before 
the
 court; or (3) to enable 
the
 court to make a complete determination of 
the
 controversy.  
Holzer
, 295 
Ill. App. 3d
 at 970.
 

Defendant has failed to demonstrate any interest that Union has in 
the
 subject matter of this controversy.  There is no support for 
the
 proposition that 
plaintiff
's bankruptcy claim against Union bars 
plaintiff
 from prevailing on its claim for conversion against 
defendant
.  
Union filed for bankruptcy on December 29, 1999.  The documents filed in support of 
the
 motion for summary judgment confirm that Union sent 
plaintiff
's
 commissions to 
defendant
 prior to filing for bankruptcy.
  Thus, 
Union no longer had an interest in 
the
 asset as it belonged to either
 
plaintiff
 or 
defendant
.  
Moreover, while 
plaintiff
 might be barred from having a double recovery, there is nothing in 
the
 law or in Union's bankruptcy matter that bars 
plaintiff
 from pursuing recovery of its funds that are wrongfully possessed by 
defendant
. 

Even if Union had an interest in 
the
 subject matter of 
the
 litigation, which it does not, 
the
 doctrine of representation resolves this matter.  See 
Holzer
, 295 
Ill. App. 3d
 at 973 (a necessary party need not be joined if his interests are fully and adequately represented).  Here, 
the
 funds identified in 
plaintiff
's complaint irrefutably belong to either 
plaintiff
 or 
defendant
.  No other possibility is demonstrated by 
the
 pleadings in this matter.  As such, regardless of 
the
 decision of 
the
 trial court, 
the
 "interests" of Union are actually protected because 
the
 proper party in interest, 
vis-a-vis
 Union, will possess 
the
 funds.

Furthermore, if 
defendant
 believed that Union was a necessary party, for whatever reason, then 
defendant
 should have brought Union into this action.  Defendant possessed a clear right to bring in a new party if it so desired.  See 735 ILCS 5/2--406 (West 2002).  We reject 
defendant
's arguments.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

CALLUM and GILLERAN JOHNSON, JJ., concur.