533 F.Supp.2d 784 (2007)
NATIONAL ACCIDENT INSURANCE UNDERWRITERS, INC., Plaintiff/Counterclaim-Defendant, and
American National Insurance Company, Intervenor-Plaintiff/Counterclaim-Defendant,
v.
CITIBANK, F.S.B., Defendant/Counterclaim-Plaintiff/Third-Party Plaintiff.
No. 02 C 3390.
United States District Court, N.D. Illinois, Eastern Division.
August 24, 2007.
*785 Brian Michael Dougherty, O'Rourke, Katten & Moody, Chicago, IL, for Plaintiff/Counterclaim-Defendant.
Todd A. Rowden, Scott P. Clair, Timothy Binetti, Thompson Coburn LLP, Chicago, IL, for Defendant/Counterclaim-Plaintiff/Third-Party Plaintiff.
William A. Chittenden, III, David Joseph Novotny, Elizabeth Gwynn Doolin, Jennifer Susan Stegmaier, Matthew W. Gasaway, Chittenden, Murday & Novotny, LLC, Chicago, IL, Amy L. Knighton, Andrew J. Mytelka, Kelly-Ann Clarke, Greer Hem & Adams L.L.P., Galveston, TX, for Intervenor-Plaintiff/Counterclaim-Defendant.
Michael J. O'Rourke, Mitchell Bruce Katten, Richard F. Linden, O'Rourke, Katten & Moody, Chicago, IL.

ORDER
JOAN B. GOTTSCHALL, District Judge.
Plaintiff-intervenor American National Insurance Company ("ANICO") sued Citibank, F.S.B. ("Citibank") under the Illinois Uniform commercial Code, 810 ILCS § 5/3-420 (1992) ("UCC 3-420") for conversion of forty-four checks made payable to National Accident Insurance Underwriters, Inc. ("NAIU") but which were intercepted and altered by NAIU employee Robert Carter. Citibank has moved for summary judgment. For the reasons stated below, Citibank's motion for summary judgment is granted.

I. BACKGROUND

NAIU is engaged in the business of insurance underwriting, marketing, and claims processing. In May 2002, NAIU sued Citibank for conversion under UCC 3-420. The complaint alleged that Robert Carter ("Carter"), an NAIU employee, had engaged in a scheme to intercept and convert to his own use over $10 million of premium checks payable to NAIU. Carter allegedly added the payee "Sherman" to the checks. Carter indorsed the altered checks and deposited them in a Citibank account he opened years earlier on behalf of Sherman Imports, Inc. Citibank accepted the altered checks, credited Carter's account, and presented the checks to various drawee banks for payment.[1]
*786 ANICO is in the business of insuring group accident, blanket accident and individual accident insurance. On October 10, 2003, ANICO was granted leave to intervene in the litigation based on ANICO's assertion that it had an ownership interest in the checks. NAIU and Citibank subsequently settled their dispute[2] and ANICO filed a forty-five count complaint against Citibank which asserted, pursuant to 810 ILCS § 5/3-420, a separate conversion claim for each of forty-five checks, at least some of which were named in NAIU's complaint.[3]
It is undisputed that ANICO is neither a payee nor indorsee on any of the checks named in its complaint. The checks were made payable to "NAIG," "National Accident Insurance," "National Accident Insurance Gr.," "National Accident Insurance Group," and "N A I U."
ANICO asserts that it is the "true owner" of the checks based on the following undisputed facts. In September of 1998, ANICO and NAIU entered into a pooling agreement  the National Accident Insurance Group Underwriting Agreement ("NAIG III Agreement" or the "Agreement")  which provided that ANICO was the sole participant in an insurance pool known as the National Accident Insurance Group ("NAIG"). In the Agreement, ANICO is referred to as "Participant" and NAIU is the "Manager." The stated purpose of the Agreement was to authorize NAIU, on behalf of and under the name NAIG, to transact the kinds of insurance described in the Agreement. Citibank's Statement of Facts Ex. 5.
NAIU collected premiums for the insurance policies it issued, marketed, and sold in the NAIG pool pursuant to the NAIG III Agreement. Upon receipt of the premium checks, NAIU was required to deposit the premiums into a separate Premium Trust Account established for the NAIG.[4]
It is undisputed that ANICO was not a signatory on the Premium Trust Account. There is no evidence that ANICO had the authority to withdraw funds from the Premium Trust Account while NAIU served as Manager of the NAIG pool. Each month, NAIU wrote a single check to ANICO for fees and taxes from the funds collected by NAIU.
Citibank has moved for summary judgment on the grounds that (1) ANICO does not have standing to bring a conversion suit for the checks at issue because it is not a payee of the checks; (2) ANICO does not have standing to bring a conversion suit because the checks were never "delivered" to ANICO; and (3) several of ANICO's claims are time-barred. Because the court agrees that ANICO's status as a non-payee of the checks precludes its claim for conversion of those checks, Citibank's motion is granted and the court does not reach Citibank's other two grounds for judgment.

II. DISCUSSION
Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 *787 L.Ed.2d 265 (1986). The operative facts here are not in dispute. Rather, ANICO and Citibank disagree over the legal effect of UCC 3-420 on those facts, which is appropriately resolved on a motion for summary judgment.
ANICO's claim is that Citibank converted the forty-four checks at issue in violation of UCC 3-420.[5] UCC 3-420 provides that "[t]he law applicable to conversion of personal property applies to instruments" and that "[a]n instrument is . . . converted if it is taken by transfer, other than negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." 810 ILCS 5/3-420(a) (1992). "To establish that a financial institution is liable for conversion under Illinois law, the plaintiff, must establish (1) that she, owned, held an interest in, or had the right to possess a negotiable instrument; (2) that someone forged or without authority placed the plaintiffs endorsement on the instrument; and (3) that the defendant financial institution negotiated the check without her authorization." Rodrigue v. Olin Employees Credit Union, 406 F.3d 434, 439 (7th Cir.2005); see also Continental Cas. Co. v. American Nat'l Bank & Trust Co. of Chicago, 329 Ill.App.3d 686, 263 Ill.Dec. 592, 768 N.E.2d 352, 361. (2002); Burks Drywall, Inc. v. Washington Bank & Trust Co., 110 Ill.App.3d 569, 66 Ill.Dec. 222, 442 N.E.2d 648, 652 (1982).
It is well established under Illinois common law that "[t]he subject of conversion must be an identifiable object of property." Cumis Ins. Soc., Inc. v. Peters, 983 F.Supp. 787, 793 (N.D.Ill.1997) (citing In re Thebus, 108 Ill.2d 255, 91 Ill.Dec. 623, 483 N.E.2d 1258, 1260 (1985)). Money may be the subject of conversion but only if the sum of money is capable of being described as a specific chattel. Sandy Creek Condo. Ass'n v. Stolt and Egner, Inc., 267 Ill.App.3d 291, 204 Ill.Dec. 709, 642 N.E.2d 171, 174 (1994) (citing In re Thebus, 91 Ill.Dec. 623, 483 N.E.2d at 1260). However, an action for conversion will not lie for money represented by a general debt or obligation. In re Thebus, 91 Ill.Dec. 623, 483 N.E.2d at 1261; see also Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago, 837 F.Supp. 892, 897 (N.D.Ill.1993) ("Illinois courts do not recognize an action for conversion of intangible rights.").
Illinois common law recognizes negotiable instruments such as checks to be identifiable objects of property. See Great Lakes Higher Educ. Corp., 837 F.Supp. at 897 ("Illinois courts do recognize a cause of action for conversion of commercial paper, such as a check, on the theory that the intangible right is merged into the specific document,"); In re Oxford Marketing, Ltd., 444 F.Supp. 399, 404 (N.D.Ill.1978) (same).
*788 However, only a person with rights to the negotiable instrument, i.e. the check, may bring a claim for conversion of it. See Great Lakes Higher Educ. Corp., 837 F.Supp. at 897 (The payee of a check is the only one with the requisite possessory interest in the check to bring a claim for its conversion.); compare P.M.F. Services, Inc. v. Grady, 681 F.Supp. 549, 558 (N.D.Ill.1988) (dismissing plaintiff P.M.F.'s claim for conversion of checks when P.M.F. failed to allege it was either the owner or payee of the checks or that P.M.F.'s endorsement was forged).
Importantly, a person with' rights to a negotiable instrument is distinct from a person who may have rights to the funds backed by the check. See Great Lakes Higher Educ. Corp., 837 F.Supp. at 897 (no action for the conversion of intangible rights such as money but only for the conversion of a specific check or draft); Newport Steel Corp. v. Thompson, 757 F.Supp. 1152, 1156 (D.Colo.1990) (no claim for conversion may lie for plaintiff who may have been owed the money that the check backed but who was not payee of the check); see In re Oxford Marketing, Ltd, 444 F.Supp. at 404-05 (trustee who did not allege that he ever had title to or possession of a negotiable instrument may lack standing under UCC § 3-419 or under common law principles); see also Ohio Cas. Ins. Co. v. Bank One, No. 95 C 6613, WL 507292, at *11 (N.D.Ill., Sept. 5, 1996) (noting that under § 3-420 `of the revised UCC, a plaintiff must have title to or possession of the checks to bring an action for conversion of an instrument); Twellman v. Lindell Trust Co., 534 S.W.2d 83 (Mo.Ct.App.1976) (only the holder or payee of a negotiable instrument may properly sue for conversion under § 3-419).
Here, it is undisputed that ANICO was neither the payee nor the endorsee of the checks at issue. There is no evidence that ANICO's endorsement was forged on the checks. Indeed, there is no evidence that ANICO even had the authority to withdraw funds from the Premium Trust Account, into which the checks were meant to be deposited, while NAIU served as Manager of the NAIG pool. Therefore, ANICO does not have the requisite possessory interest in the checks at issue to bring a claim of conversion against Citibank, the depositary bank.
ANICO argues that it is the "true owner" of the checks and therefore has standing to sue Citibank notwithstanding the undisputed fact that it is not the payee of the checks. Pl.'s Opp. 5. ANICO asserts that the checks were intended to pay for insurance provided by or assumed by ANICO, and that NAIU was merely an intermediary that collected the premiums and held them in a fiduciary capacity as trustee on behalf of ANICO[6] ANICO's Opp. 11. *789 Even if this were true, ANICO is hot entitled to relief under UCC 3-420 because all ANICO's facts prove is that ANICO has a right to possession of the funds that the checks represented.[7]See ANICO's Opp. 10 ("In determining who had an ownership interest in the Checks, this Court must ascertain who owned the premiums for which the Checks represented payments."). This is not a sufficient possessory interest to bring a cause of action under UCC § 3-420 or Illinois common law for the conversion of checks. See Great Lakes Higher Educ. Corp., 837 F.Supp. at 897 (A party pleading an action in conversion under either common law principles or UCC § 3-419 must allege that it had title to or possession of the check.); Ohio Cas. Co., 1996 WL 507292, at *11 ("[W]hile money may be the subject of a conversion action, the plaintiff must be able to describe it as a specific chattel."); P.M.F. Services, Inc., 681 F.Supp. at 558 (plaintiffs possession of the converted property has always been regarded as an essential element of a conversion claim (citing First Nat'l Bank of Chicago v. Pease, 168 Ill. 40, 48 N.E. 160 (1897))).
ANICO also argues that UCC 3-420 does not require a plaintiff to be a payee of the checks in order to have standing, asserting
that the statute is silent as to who may assert a claim for conversion. ANICO's Opp. 4. The court declines to adopt this interpretation, noting that no other court interpreting Illinois law has done so.[8] Furthermore, ANICO's suggested interpretation of the statute disregards the provision that states: "The law applicable to conversion of personal property applies to instruments," See UCC 3-420. The law applicable to conversion of instruments in Illinois plainly provides relief for a plaintiff who owned, had an interest in, or had the right to possess the negotiable instrument. See Rodrigue, 406 F.3d at 429. ANICO has not met its burden of demonstrating that it meets this requirement. Indeed, ANICO's reading of the statute to include non-payees would render the next element of the conversion claim  requiring that the plaintiffs endorsement be forged without authority  meaningless. See id. ("To establish that a financial institution is liable for conversion under Illinois law, the plaintiff must establish . . . that someone forged or without authority placed the plaintiffs endorsement on the instrument").
The distinction between the owner of a check and the owner of the funds backed by the check in conversion cases is rationally related to the oft-cited principle that *790 money may nit be the subject of conversion unless it is capable of being described as a specific chattel. See In re Thebus, 91 Ill.Dec. 623, 483 N.E.2d at 1260. To the extent that ANICO was deprived of funds that rightfully belonged to it, its recourse lies against NAIU and Carter, not against Citibank for actions it took relating to checks not made out to ANICO.

III. CONCLUSION
For the foregoing reasons, defendant's motion for summary judgment is granted.
NOTES
[1] Carter pled guilty to one count of mail fraud and One count of tax fraud in connection with these checks.
[2] See Order of Dismissal, March 17, 2006.
[3] On November 10, 2006, ANICO moved to voluntarily dismiss Count XXVI, for Check No. 2141.
[4] The Agreement does not state that all checks collected by NAIU should be made payable to the order of, or endorsed over to, ANICO. ANICO did not direct NAIU to instruct the drawers of any premium checks to make those checks payable to the order of ANICO.
[5] The common law action for the conversion of checks was previously governed by UCC § 3-419, Ill.Rev.Stat. ch. 26, § 3-419, which "was intended to be a codification of prior Illinois common law." Burks Drywall, Inc. v. Washington Bank and Trust Co., 110 Ill. App.3d 569, 66 Ill.Dec. 222, 442 N.E.2d 648, 652 (1982). Under former Article 3, courts were divided on the issue of whether the drawer of a check with a forged indorsement could assert rights against a depositary bank that took the check. 810 ILCS 5/3-420(a) (1992) cmt. 1. The last sentence of UCC 3-420(a) resolved the conflict by precluding the drawer of a check from bringing a claim of conversion; a drawer's claim would be against the payor bank for recredit of the drawer's account for unauthorized payment of the check. Id. The new version also precludes a payee who never receives delivery of the check from bringing a claim against the depositary bank; until delivery, the payee does not have any interest in the check. See id.
[6] ANICO points to the following provision of the NAIG III Agreement:

All premiums received by the Manager, reinsurance recoveries from Outside Reinsurance, and any other monies received by the Manager and due the Participant(s) shall be held by the Manager in a fiduciary capacity as trustee for the Participant(s). Such funds shall be held in a separate premium trust account (the "Premium Trust Account") established in the name of the NAIG with the. Manager named as trustee of the account at a bank which is the member of the Federal Reserve System and which has assets at the time of deposit of at least $250 million or at another bank on consent of the Advisory Committee, segregated from all other funds held by the Manager, until such funds are delivered to the Participant(s) or otherwise utilized in accordance with this Agreement.
Citibank's Statement of Facts Ex. 5. This provision, however, does not refer to the checks at issue; rather it refers to the premiums and funds collected by NAIU.
[7] Even this argument falls short given ANICO's admission that some of the checks contain amounts for payment of premiums on Royal Sunalliance policies, business that was not part of the insurance pool in which ANICO was a participant. ANICO's Resp. Citibank's Statement of Facts 75. ANICO argues that this goes to the issue of damages rather than standing, see ANICO Opp. 15, n. 16, but the undisputed fact that ANICO is not even entitled to all of the funds backed by the checks proves that ANICO is not seeking a "specific chattel" or specifically identifiable funds. See Sutherland v. O'Malley, 882 F.2d 1196, 1200 (7th Cir.1989) ("Where the plaintiff's right is merely to an indeterminate sum of money, a conversion action cannot successfully be maintained.").
[8] ANICO relies heavily on Clients' Sec. Fund of State of N.Y. v. Goldome, 148 Misc.2d 157, 560 N.Y.S.2d 84 (N.Y.Sup.Ct.1990). In Goldome, plaintiff's assignee sued the depositary bank for conversion of a check made payable to plaintiff's attorney for proceeds from the sale of plaintiff's house. The attorney kept the money and the court held that the fact that the plaintiff was not named as payee on the check was of no consequence since he was the "rightful owner" of the check. Id. To the extent this case stands for the proposition that non-payees have standing to sue depositary banks under Section 3-420, the court declines to follow it in light of the overwhelming authority that contradicts its holding, and notes that no other court has followed it.