BILL MAREK'S THE COMPETITIVE EDGE, INC., Plaintiff-Appellee, v. MICKELSON GROUP, INC., Defendant-Appellant.

Second District    No. 2—03—0259

Opinion filed March 17, 2004.—Rehearing denied April 12, 2004.

James J. Flood, of James J. Flood, P.C., of Skokie, and Ronald A. Bredemann, of Crystal Lake, for appellant.

Bryan R. Bagdady, of Bryan R. Bagdady, P.C., of Lisle, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Union Underwear Company, Inc. (Union), which is not a party to this appeal, purportedly owed plaintiff, Bill Marek's The Competitive Edge, Inc., unpaid sales commissions but mistakenly paid them to defendant, Mickelson Group, Inc. Plaintiff made numerous demands upon defendant for the immediate transfer of the funds to plaintiff, the funds totaling $65,008.99, and defendant refused. Thereafter, plaintiff filed a two-count complaint against defendant based on the claims of conversion and constructive trust. The trial court granted plaintiff's motion for summary judgment on the conversion count for $65,008.99, plus interest. Defendant contends on appeal that the trial court (1) erred in granting summary judgment for plaintiff on the conversion claim; (2) abused its discretion by imposing discovery sanctions against defendant; (3) abused its discretion by failing to strike plaintiff's supporting affidavits; and (4) erred in denying defendant's motions to dismiss for lack of jurisdiction and for failure to join Union as a necessary party. We affirm.

The following facts are taken from the complaint as well as the supporting documents and affidavits. On January 6, 1997, plaintiff entered into a sales representative agreement with Union. Plaintiff remained a sales representative for Union until its contract was terminated by letter on May 5, 1999. The original sales agreement between plaintiff and Union and the notice of termination letter provided that plaintiff was to receive commission payments on orders taken, submitted, and shipped within six months after the effective date of the termination, *i.e.*, from the effective date of May 5, 1999, through December 5, 1999.

Defendant became Union's successor sales representative after the

relationship between plaintiff and Union ended. Due to an administrative error, Union sent plaintiff's commission payments, totaling $65,008.99, to defendant.

On November 24, 1999, Union and plaintiff discovered that plaintiff's earned commissions were mistakenly sent to defendant. Union acknowledged in writing to plaintiff that it sent plaintiff's commission payments to the wrong agency and documented the nature of the error in two reports, dated December 21 and December 22, 1999. The reports, which were referenced in a spreadsheet as group "Exhibit E," were attached to plaintiff's complaint. Exhibit E was later attached to plaintiff's motion for summary judgment.

Plaintiff then verbally demanded that defendant transfer the funds to plaintiff. Defendant failed to transfer the funds as demanded. Defendant admitted that it is the successor sales representative for Union; that it received copies of the Union reports dated December 21 and 22, 1999, which documented the nature of the error in payment; and that plaintiff made numerous verbal demands for the transfer of the funds identified in the complaint.

On December 29, 1999, Union filed for bankruptcy. Plaintiff received a creditor's notice. On April 11, 2000, plaintiff prepared a claim for bankruptcy court that sought, *inter alia,* unpaid commissions from Union.

Thereafter, on May 4, 2000, plaintiff filed the instant complaint to collect its unpaid commissions that Union mistakenly paid to defendant. In count I, the conversion count, plaintiff alleged that defendant had no claim or right to plaintiff's sales commissions and defendant wrongfully assumed control, dominion, and ownership over these funds. Plaintiff alleged that the orders identified in Exhibit E were taken by plaintiff and submitted to Union for approval on or before June 5, 1999, and the products identified in Exhibit E were shipped on or before December 5, 1999. Plaintiff further alleged that there were no deductions taken against plaintiff's account and the commissions identified in Exhibit E are plaintiff's property. Plaintiff alleged that defendant was paid the sum of $65,008.99, which represents the total commissions that were and are due and owing to plaintiff. Plaintiff further alleged that defendant did not take, submit, or ship any of the orders identified in Exhibit E.

On June 14, 2000, defendant filed its answer and affirmative defenses to count I. On August 2, 2000, plaintiff filed a motion to dismiss defendant's affirmative defenses. Thereafter, defendant filed a motion to amend its answer and affirmative defenses. The trial court granted defendant's motion and ordered that the case be continued for a case management conference on October 23, 2000.

On October 23, 2000, the trial court granted defendant's motion for an extension of time. The trial court also ordered that written discovery be completed by December 22, 2000, that oral discovery be completed by March 23, 2001, and that the cause be heard for a pretrial conference on April 6, 2001. Defendant filed its first amended answer and one affirmative defense.

Defendant's affirmative defense stated that the prior sales agreement between Union and plaintiff provided that commissions could not and would not be paid on bulk projections but, rather, on purchase orders identified by purchase order numbers that had been issued by the customer and on products shipped to the customer. Plaintiff denied the affirmative defense.

Plaintiff issued interrogatories, including Supreme Court Rules 213(f) and (g) interrogatories (177 Ill. 2d Rs. 213(f), (g)), on December 19, 2000. Defendant did not issue any interrogatories to plaintiff. Although the record does not contain a corresponding notice of written discovery, defendant did propound a Supreme Court Rule 214 (166 Ill. 2d R. 214) notice to produce to plaintiff, and plaintiff provided responsive documents to defendant.

On February 22, 2001, defendant answered plaintiff's Rules 213(f) and (g) interrogatories. Interrogatory number one called for the names and addresses of all witnesses who would testify at trial and requested the identification of the subject or subjects of the testimony of each witness. Defendant did not identify any subject matter. Interrogatory number two asked for the identification of the name and address of each opinion witness who would testify at trial and asked that the subject matter, the conclusions and opinions, and the qualifications of each such witness be identified. Defendant answered: ''None, investigation continues.'' Interrogatory number six asked for the identification of each and every person who defendant believed was of the opinion that defendant properly received or was entitled to retain the commissions. Defendant stated, ''Tim Kenney, address unknown, investigation continues.'' Timothy Kenney is an affiant for plaintiff and the author of Exhibit E.

On April 13, 2001, the trial court heard the matter for a case management conference. The trial court closed discovery as of August 3, and set a pretrial hearing for August 10, 2001. At the pretrial hearing, the trial court closed discovery and ordered that the case be heard for trial on January 7, 2002.

Thereafter, the parties agreed to present the conversion count to the trial court on cross-motions for summary judgment. Accordingly, on December 28, 2001, plaintiff filed an agreed motion for hearing on partial summary judgment. The motion stated that the parties were

prepared to file their motions for summary judgment *instanter*. The trial court granted the motion and ordered the parties to file their cross-motions for summary judgment by January 4, 2002, and to respond to the cross-motions by January 30, 2002. The trial court further ordered that the cross-motions for summary judgment be heard on February 27, 2002, and struck the trial date of January 7, 2002.

Plaintiff timely filed its motion for summary judgment. Defendant did not file a cross-motion for summary judgment. Instead, on January 28, 2002, defendant filed a motion for judgment on the pleadings, a motion to dismiss for lack of jurisdiction, and a motion to dismiss for plaintiff's failure to join Union as a necessary party. Defendant also filed a motion to strike in lieu of a response to plaintiff's motion for summary judgment.

On February 15, 2002, plaintiff received defendant's supplemental answers to plaintiff's Rules 213(f) and (g) interrogatories. On February 19, plaintiff filed a motion to strike defendant's supplemental answers. When the briefing schedules were set with respect to plaintiff's motion to strike, counsel for defendant stated to the court that "the light went on after [he] received plaintiff's motion for summary judgment" and that counsel thereafter conducted his own discovery that led to the development of the supplemental answers. The trial court found that defendant's supplemental answers were not timely disclosed and granted plaintiff's motion to strike.

After the trial court denied defendant's motion to strike in lieu of a response to plaintiff's motion for summary judgment, defendant asserted that it had never directly responded to the summary judgment motion, and it sought leave to file a direct response. Defendant assumed that the motion for summary judgment would be "muted" by its other motions and therefore never directly responded to the summary judgment motion. The trial court allowed defendant to file a response.

On August 28, 2002, defendant filed a response to the motion for summary judgment. Attached to defendant's response were the counteraffidavits of Douglas Kelly, Daniel Raskin, and James Gilberto. Plaintiff filed a motion to strike the affidavits. The trial court granted the motion to strike on the basis of defendant's failure to timely answer plaintiff's Rules 213(f) and (g) interrogatories.

Following oral argument on the summary judgment motion as to the conversion count, the trial court entered judgment in favor of plaintiff in the amount of $65,008.99, plus interest. Because the constructive trust count requested the same relief as the conversion count, the trial court found it unnecessary to impose a constructive

trust. See *Fujisawa Pharmaceutical Co. v. Kapoor*, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998) (under Illinois law, a constructive trust describes an equitable remedy, rather than a separate cause of action). Defendant timely appeals.

■ We first examine whether the trial court erred in granting summary judgment for plaintiff on the conversion count. Summary judgment is properly granted where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002). We review *de novo* an order granting summary judgment. *City of Chicago v. Holland*, 206 Ill. 2d 480, 487 (2003).

■ Conversion is " 'any unauthorized act, which deprives a man of his property permanently or for an indefinite time.' " *In re Thebus*, 108 Ill. 2d 255, 259 (1985), quoting *Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.*, 157 Ill. 554, 563 (1895). The substance of conversion is " 'the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held.' " *Thebus*, 108 Ill. 2d at 259, quoting *Bender v. Consolidated Mink Ranch, Inc.*, 110 Ill. App. 3d 207, 213 (1982). Accordingly, to prove conversion, the plaintiff must prove the following elements by a preponderance of the evidence: (1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the plaintiff's personal property; (2) the plaintiff's right in the property; (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) the plaintiff's demand for possession of the property. *Stathis v. Geldermann*, 295 Ill. App. 3d 844, 856 (1998).

Defendant asserts that unpaid sales commissions cannot form the basis for a claim of conversion. Defendant contends that, as a matter of law, an action for conversion may not be maintained for a mere failure to pay money unless it is capable of being described as a specific chattel. See *Fonda v. General Casualty Co. of Illinois*, 279 Ill. App. 3d 894, 899 (1996). We disagree.

■ It is no longer necessary that money be specifically earmarked in order to sustain an action for conversion. An action for conversion may also be maintained where the converted funds are capable of being described, identified, or segregated in a specific manner. See *Thebus*, 108 Ill. 2d at 260-62; *Roderick Development Investment Co. v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052, 1058 (1996); *Fonda v. General Casualty Co.*, 279 Ill. App. 3d 894, 899 (1996) (insurance proceeds of $20,091.70 sufficiently identifiable to support conversion action); *Addante v. Pompilio*, 303 Ill. App. 172 (1940) ($3,000

transmitted to brother sufficiently identifiable to support conversion action). A right to an indeterminate sum is insufficient to maintain a cause of action in conversion. See, *e.g., Mid-America Fire & Marine Insurance Co. v. Middleton,* 127 Ill. App. 3d 887, 892 (1984).

■ In *Thebus,* 108 Ill. 2d at 264, the supreme court held that an attorney had not converted funds he withheld from his employees' paychecks by failing to pay this money to the Internal Revenue Service. The court explained that, although a specified identifiable fund could be the subject of a conversion action, there could be no conversion action for money represented by a general debt or obligation. The court decided that the character of the funds the attorney withheld for taxes was in the nature of a debt to the government rather than an identifiable fund, and the attorney did not maintain a separate bank account in which the taxes withheld and owed to the Internal Revenue Service were deposited. Similarly, he did not maintain a separate payroll account. Therefore, the attorney held no identifiable sum of money or fund for the Internal Revenue Service. The money owed to the government did not come into the attorney's hands from any outside source. It was an amount that accrued with each period as he wrote the payroll checks from his general checking account for the net amount of wages after taxes, retaining in his checking account the difference between the gross wages and the amount of the checks. *Thebus,* 108 Ill. 2d at 263.

Unlike the funds at issue in *Thebus,* the funds here were specifically identifiable. The amount plaintiff claims defendant exercised control over was specifically identifiable given the sales agreement between plaintiff and Union, the notice of termination letter, the orders identified in Exhibit E, which were taken, submitted, and shipped within six months after the effective date of termination, and the affidavits attached to the motion for summary judgment. The exact sales identified in Exhibit E show that the earned commissions amounted to $65,008.99. In particular, the affidavit of Timothy Kenney, Union's customer service manager and the author of Exhibit E, stated that the commissions generated in Exhibit E were based on the orders generated by plaintiff and accurately reflected the business records and computer data that Union maintained. Kenny averred that the orders identified in Exhibit E amounted to $65,008.99, representing the commissions which were due and owing to plaintiff.

Further, unlike the amount allegedly converted in *Thebus,* the amount defendant converted in this case was not a portion of its own assets that defendant was obligated to use to satisfy a debt to plaintiff. Rather, the funds were the specific funds transferred to defendant from an outside source, Union. Therefore, the funds also were identifiable in this respect.

We also find *Roderick Development Investment Co. v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052 (1996), particularly instructive. Similar to the argument presented here, the defendant in *Roderick* argued in defense of the conversion claim that the action involved money that was not specifically identifiable or in a separate account. In rejecting this argument, the *Roderick* court pointed out that the amount the plaintiff claimed the defendant converted did not accrue but was specific and identifiable; it was exactly 5% of the final payment that was due under the purchase agreement, which was paid in a lump sum. The court further noted that the money was identifiable because it was a specific amount transferred from an outside source. *Roderick*, 282 Ill. App. 3d at 1059.

The *Roderick* court also rejected the defendant's argument that the amount claimed by the plaintiff was not identifiable because it was not segregated or kept in a separate account. *Roderick*, 282 Ill. App. 3d at 1062-63. The court explained that, where the allegedly converted funds come from an outside source, the failure to segregate the funds does not make them unidentifiable. The court stated that it would be unfair to fashion a rule that prohibits a conversion action for funds that are not segregated. "Such a rule gives the alleged converter control over whether certain funds are subject to conversion because, depending on the type of account in which he chooses to place the funds, the funds may or may not be considered identifiable and, therefore, may or may not be subject to conversion. A party, such as the plaintiff, with no contractual relationship with the alleged converter could not dictate the manner in which the funds were held." *Roderick*, 282 Ill. App. 3d at 1063; see also *Greene County Board of Education v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991) (requirement that there be earmarked money or specific money capable of identification before there can be a conversion has been complicated as a result of the evolution of our economic system); *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91, 510 P.2d 400, 402 (1973) (converted funds must be described, identified, or segregated in a specific manner). We are persuaded by the *Roderick* court's reasoning.

Defendant argues that the relationship between defendant and plaintiff is one of debtor-creditor, and therefore, a conversion action is inappropriate. Contrary to defendant's argument, the relationship between defendant and plaintiff is not one of debtor and creditor. In *General Motors Corp. v. Douglass*, 206 Ill. App. 3d 881 (1990), for example, the court held that a conversion action was not appropriate because the relationship between the plaintiff and the defendant was represented by a general debtor obligation. General Motors maintained a "holdback" account for its dealers from which it made periodic pay-

ments. It mistakenly paid one of its dealers, the defendant, $37,364.36, although it owed the defendant only $12,836.88. The defendant refused to return the amount General Motors had overpaid it. *General Motors*, 206 Ill. App. 3d at 883. As explained in *General Motors*, 206 Ill. App. 3d at 888, a debtor-creditor relationship is created when a party (the creditor) voluntarily transfers his property to another (the debtor). See also *Fonda*, 279 Ill. App. 3d at 901. Because General Motors had created a debtor-creditor relationship with the defendant when it voluntarily transferred money to the defendant, the court held that there could be no conversion. *General Motors*, 206 Ill. App. 3d at 891-92. Similarly, in *Thebus*, the government became a creditor of the attorney by allowing the attorney to collect withholding taxes for it. See also *Katz v. Belmont National Bank of Chicago*, 112 Ill. 2d 64 (1986) (third party's action in depositing plaintiff's funds into defendant bank created a lawful creditor-debtor relationship between third party and bank so that legal title passed to bank and therefore plaintiff could not bring conversion action against bank).

Here, by contrast, there was no creditor-debtor relationship between plaintiff and defendant. Plaintiff never voluntarily transferred funds to defendant. Rather, defendant mistakenly received plaintiff's funds from a third party. The funds were not a debt and, therefore, were subject to conversion.

Defendant further argues that, once it received the money from Union, it never committed an act of conversion. The uncontroverted evidence shows that plaintiff was due a percentage of the sales commissions, which were earned before Union fired plaintiff, in the amount of $65,008.99; that this amount represents the property of plaintiff; that there were no deductions or setoffs against plaintiff's account; and that the amount of the commissions identified represents the total amount paid to defendant. It is further undisputed that plaintiff made a demand for its unpaid sales commissions that were mistakenly paid to defendant, and defendant refused to pay the amount to plaintiff. Once plaintiff made the demand to transfer its property and defendant refused to do so, defendant committed an act of conversion.

We next address whether the trial court abused its discretion by imposing discovery sanctions against defendant. Defendant asserts that the trial court abused its discretion in striking its proposed supplemental answers to plaintiff's Supreme Court Rules 213(f) and (g) interrogatories (177 Ill. 2d Rs. 213(f), (g)), and barring defendant from presenting any witnesses as a sanction pursuant to Supreme Court Rule 219 (166 Ill. 2d R. 219). We note that defendant's arguments rely on revised Supreme Court Rule 213, which became effec-

tive July 1, 2002. However, because discovery closed on August 3, 2001, the previous rule governs this analysis. See 210 Ill. 2d Rs. 213(f), (g).

■ Supreme Court Rule 213(f) provides that "[u]pon written interrogatory, a party must furnish the identity and location of witnesses who will testify at trial, together with the subject of their testimony." 177 Ill. 2d R. 213(f). Rule 213(i) imposes on a party the continuing duty to supplement discovery responses, including the disclosure of witnesses and proposed testimony, "whenever new or additional information subsequently becomes known to that party." 177 Ill. 2d R. 213(i). Under the rules, to avoid surprise, a party has the obligation of disclosing the identity, location, and anticipated testimony of all witnesses who will testify at trial. *Athans v. Williams*, 327 Ill. App. 3d 700, 702 (2002).

Defendant supplemented its responses to plaintiff's interrogatories on February 15, 2002, after discovery had closed and after plaintiff had filed its motion for summary judgment. Defendant stated the names of Peter Lewis, Doug Kelly, James Gilberto, Frank Novelli, Bette Nelson, Hugh Hoffman, and Daniel Raskin as witnesses whom defendant intended to call at trial and stated the subject of their testimony as follows. Defendant did not list Lewis's qualifications. Defendant stated only that Lewis would acknowledge the oral agreement between defendant and Pro Player Sports Apparel Company, a subsidiary of Union. Defendant stated that Doug Kelly, the president of Pro Player, was aware of the payment issues between plaintiff and defendant in December 1999. Kelly was also fully knowledgeable about the reports used in Pro Player's commission statements, as well as the definition of a "Bulk Order" and a "Confirmed Purchase Order." Based on his knowledge, position, and background, Kelly believed that the commissions on the sales identified in Exhibit E were earned by and payable to defendant. Defendant did not list Gilberto's qualifications. Defendant stated that Gilberto's testimony would confirm that plaintiff's bulk orders were nonbinding because they were routinely changed, canceled, or reworked. Gilberto would also state that defendant's orders were confirmed purchase orders for the several accounts within its territory, and that the commissions from these orders ultimately belonged to defendant, not plaintiff. Raskin, the vice president of sales for Pro Player, hired defendant to replace plaintiff and would testify to the particulars of the relationship between defendant and Pro Player. Hoffman, an independent sales contractor who entered into an agreement with defendant on June 6, 1999, for services as a key account salesman for Kohl's Department Stores, would testify that due to a buyer change at Kohl's after the first week

in June 1999, many of the bulk orders that plaintiff initially entered were completely changed and reentered by defendant due to the new buyer's product selection on those bulk orders. Hoffman worked with Nelson, who was his customer service associate. Nelson would confirm Hoffman's testimony.

Here, neither the identity of the witnesses nor the subject matter of their testimony was timely disclosed. Moreover, these disclosures were issued without leave of court. Defendant did not file a motion for leave to supplement its answers. Nor did defendant file a motion to extend or reopen discovery or file a motion to modify the briefing schedule set on the original cross-motions for summary judgment. Instead, after defendant received plaintiff's summary judgment motion, defendant undertook *ex parte* discovery.

■ Supreme Court Rule 219 specifies the consequences for a litigant's refusal to comply with the rules or court orders regarding discovery. 166 Ill. 2d R. 219. Supreme Court Rule 219(c) empowers the trial court to enter sanctions, including barring witnesses from testifying, for a party's unreasonable failure to comply with the rules or court orders regarding discovery. 166 Ill. 2d R. 219(c)(iv). The imposition of sanctions for the failure to comply with discovery lies in the trial court's discretion. *Athans*, 327 Ill. App. 3d at 703. The trial court's decision in fashioning such a remedy will not be reversed absent a clear abuse of discretion. *Athans*, 327 Ill. App. 3d at 703.

■ In determining whether the exclusion of a witness was a proper sanction for nondisclosure pursuant to Rule 213(f) or (g), the court must consider the following factors: (1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness. *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314 (1993).

■ In this case, defendant was obligated to provide the names of the trial witnesses and the subjects of their testimony in advance of trial so that plaintiff was apprised of defendant's position and the facts defendant intended to rely on in its defense. After the trial date, defendant disclosed new information that changed the entire defense. The disclosure substantially changed defendant's original answers to plaintiff's interrogatories, which stated that Kenney was the only person of the opinion that defendant had a right to retain the commissions identified in the complaint. Plaintiff relied upon defendant's original disclosure and proceeded to trial, and ultimately summary judgment, on the basis that Kenney was the uncontroverted and critical witness in the case. For defendant to change this posture after

agreeing to decide the case at the summary judgment stage was clearly a surprise and prejudicial to plaintiff.

We further find that defendant's failure to seasonably supplement its responses to the interrogatories prior to trial demonstrates a lack of diligence. Defendant had ample time and opportunity to investigate the matter through discovery. There is no indication in the record that these witnesses could not have been located or otherwise previously deposed. Defendant did not offer any reasonable excuse for its delay in locating them or disclosing the information. Other than stating that defense counsel conducted his own discovery after he received plaintiff's summary judgment motion and "the light went on," defendant offers no explanation for supplementing the interrogatories beyond the date set for trial. Accordingly, we cannot say that the trial court abused its discretion in striking the answers and barring the witnesses from testifying as a sanction pursuant to Rule 219.

■ Defendant contends that the trial court abused its discretion by striking its affidavits. On August 28, 2002, more than a year after all discovery closed and eight months after the trial date, defendant offered the affidavits of Doug Kelly, Dan Raskin, and James Gilberto. Our review of the affidavits shows that they substantially mimic the statements and opinions contained in the supplemental answers to the interrogatories that the trial court struck as a sanction pursuant to Rule 219. For the same reasons as above, we find that the trial court did not abuse its discretion in striking the affidavits.

Defendant asserts that its affidavits are acceptable because the trial date was stricken. The trial date was vacated so that the trial court could hear count I on the cross-motions for summary judgment. Defendant apparently chose not to file a cross-motion for summary judgment. However, the record does not reflect that trial was continued to permit further discovery. The practice of continuing trial for parties to depose an undisclosed opinion witness should not be, and is not, looked upon favorably. *Warrender v. Millsop*, 304 Ill. App. 3d 260, 267 (1999). Accordingly, we reject defendant's argument.

■ We next address whether the trial court abused its discretion in denying defendant's motion to strike plaintiff's affidavits for failing to comply with Supreme Court Rule 191(a) (145 Ill. 2d R.191(a)). Rule 191(a) provides that affidavits "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 145 Ill. 2d R. 191(a). The

rule further provides that "[i]f all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used." 145 Ill. 2d R. 191(a). The granting or denying of a motion to strike a summary judgment affidavit is within the sound discretion of the trial court. *Lake County Trust Co. v. Two Bar B, Inc.*, 238 Ill. App. 3d 589, 599 (1992).

Defendant argues that plaintiff's affidavits do not support the motion for summary judgment because they are replete with personal opinions and hearsay, the affiants have no personal knowledge of the terms of the agreement between defendant and Union, and the affiants are not competent to speak on behalf of Union. We disagree.

Plaintiff presented the affidavits of Bill Marek, Mark Appleman, Peter Lewis, and Timothy Kenney in support of its motion for summary judgment. The affidavits, when read in their entirety, contain the relevant facts to support Exhibit E and plaintiff's motion for summary judgment. Bill Marek is the principal for plaintiff. Mark Appleman was the national sales manager for Union. Peter Lewis was the key account sales manager for Kohl's, Sears, and Wards, and Timothy Kenney was the customer service manager for Union who authored the two reports for Union, commonly referenced as Exhibit E.

■ Exhibit E was authenticated by the affidavits as true, accurate, and maintained in the normal course of business. Each witness stated that he was familiar with the exhibit and that it was the type of report that he normally relied upon in his capacity as an employee or manager for Union. The commissions from sales that were generated by plaintiff during the relevant time period were identified in Exhibit E as earned by plaintiff, but were incorrectly paid to defendant by Union. As such, their affidavits complied with Rule 191, and we cannot say that the trial court abused its discretion in finding them to be admissible.

■ Finally, we examine whether the case should have been dismissed for lack of jurisdiction and failure to join a necessary party. Defendant asserts that the trial court could not determine the value of plaintiff's services to Union without Union's presence. Defendant further contends that the court was without jurisdiction because all matters against Union had to be brought in the bankruptcy court under the principle of federal preemption. Defendant asserts that plaintiff's status as a creditor in the Union bankruptcy means that plaintiff should protect the interests of Union. Defendant implies that plaintiff's claim against the bankrupt entity bars plaintiff from prevailing on its claim for conversion.

Illinois law provides that a necessary party is one who has a legal or beneficial interest in the subject matter of the litigation and will be

affected by the action of the court. *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 970 (1998). Case law has analyzed the concept of a necessary party in terms of the reasons such parties must be joined, such that a lawsuit ought not proceed in a party's absence: (1) to protect an interest that the absentee has in the subject matter of the controversy that would be materially affected by a judgment entered in its absence; (2) to protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy. *Holzer*, 295 Ill. App. 3d at 970.

Defendant has failed to demonstrate any interest that Union has in the subject matter of this controversy. There is no support for the proposition that plaintiff's bankruptcy claim against Union bars plaintiff from prevailing on its claim for conversion against defendant. Union filed for bankruptcy on December 29, 1999. The documents filed in support of the motion for summary judgment confirm that Union sent plaintiff's commissions to defendant prior to filing for bankruptcy. Thus, Union no longer had an interest in the asset as it belonged to either plaintiff or defendant. Moreover, while plaintiff might be barred from having a double recovery, there is nothing in the law or in Union's bankruptcy matter that bars plaintiff from pursuing recovery of its funds that are wrongfully possessed by defendant.

Even if Union had an interest in the subject matter of the litigation, which it does not, the doctrine of representation resolves this matter. See *Holzer*, 295 Ill. App. 3d at 973 (a necessary party need not be joined if his interests are fully and adequately represented). Here, the funds identified in plaintiff's complaint irrefutably belong to either plaintiff or defendant. No other possibility is demonstrated by the pleadings in this matter. As such, regardless of the decision of the trial court, the "interests" of Union are actually protected because the proper party in interest, *vis-a-vis* Union, will possess the funds.

Furthermore, if defendant believed that Union was a necessary party, for whatever reason, then defendant should have brought Union into this action. Defendant possessed a clear right to bring in a new party if it so desired. See 735 ILCS 5/2—406 (West 2002). We reject defendant's arguments.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

CALLUM and GILLERAN JOHNSON, JJ., concur.