FILED
United States Court of Appeals
Tenth Circuit

June 24, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

In re: ASHLESHA NIGAM,

    Debtor.

-----------------------------

PATRICIA COCOMA; CUSCO JACKS,
INC.,

    Plaintiffs - Appellants,

v.

ASHLESHA NIGAM,

    Defendant - Appellee.

No. 18-1371
(BAP Nos. 17-044-CO & 17-045-CO)
(Bankruptcy Appellate Panel)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Plaintiffs Patricia Cocoma and Cusco Jacks, Inc. (Cusco) appeal from the

judgment of the Bankruptcy Appellate Panel of the Tenth Circuit (BAP) that affirmed

the bankruptcy court's order and judgment dismissing their amended complaint

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

against defendant-debtor Ashlesha Nigam (Debtor). Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we affirm.

## I. Background

This case began in 2008 as a landlord-tenant dispute. Cocoma owned and operated Cusco, a retail gift store. Cusco leased its storefront from Summit, LLC (Summit), an Illinois limited liability company that was managed by the Debtor's father, Dr. Tara Nigam (Dr. Nigam). The Debtor worked as an employee of Summit to secure tenants and oversee construction of tenant improvements for A Perryville Place, a real property development located in Rockford, Illinois that Summit owned. The Debtor also partially owned Summit, along with her two siblings and Dr. Nigam. Dr. Nigam, though, "kept tight reins on this business" as its sole manager. Order Dismissing Compl., Aplts. App. Vol. III at 676. He "delegated aspects of Summit's business to the Debtor and her brother, but they always had to obtain his consent on matters of importance and never were they allowed to question his authority." *Id.* at 677.

Cusco's storefront was located in A Perryville Place. The parties' lease provided that Cusco would pay for tenant improvements to the space and that after lien releases, Summit would reimburse Cusco a specified amount in tenant improvement costs.[1] Summit engaged a title company to process the lien releases and to issue a reimbursement check to Cusco on behalf of Summit once lien-release

---

[1] The parties disagree as to the amount that was owed. The bankruptcy court did not resolve the dispute, but that is not relevant to our disposition.

processing was completed. The title company took longer than Cusco expected to issue the reimbursement check.

In part because its reimbursement check was delayed, Cusco withheld rent for the period November 2006–February 2007. Because Cusco withheld rent, Dr. Nigam instructed the title company to send Cusco's reimbursement check directly to him, and he kept the check. Summit then refused to provide the entire reimbursement amount to Cusco. Instead, in March 2007 Summit's attorney sent Cusco a settlement proposal and a reduced reimbursement check that reflected an offset for the unpaid rent. Cusco rejected the proposed settlement, returned the check to Summit, and demanded a full reimbursement check that did not reflect a setoff for unpaid rent. Summit did not meet that demand, and Cusco continued to pay reduced rent.

In early 2008, Cocoma placed a store closing advertisement for Cusco in a magazine. When Dr. Nigam and Summit became aware in March 2008 of the planned closure, Summit locked Cusco out, seized its inventory, and initiated a distress warrant procedure under Illinois state law related to the seizure of Cusco's inventory. Cusco also filed suit against Summit in Illinois state court immediately following the lockout by Summit.

Summit stored the seized inventory at A Perryville Place pending the outcome of the Illinois state court actions, which dragged on for years. Dr. Nigam died in 2010, before trial in the state cases. His death triggered foreclosure on A Perryville Place by Summit's lender. Following the foreclosure, A Perryville Place was sold to an unrelated party. The purchaser "moved to intervene in the pending state court

3

actions to demand the removal of the inventory." Aplts. App. Vol. III at 679. Ultimately, in September 2015, the state court authorized the purchaser to dispose of the inventory. "No one knows what the purchaser did with the inventory other than removing it from the premises." *Id.* at 689.

Dr. Nigam's death and the resulting foreclosure caused financial strain on the Debtor, who filed for chapter 7 bankruptcy in Colorado. Cocoma and Cusco filed an adversary proceeding in the Debtor's bankruptcy case in which they re-asserted many of their claims against the Debtor that were then pending in the state court actions. The adversary proceeding also sought a declaration that the debts arising from those claims are not dischargeable in bankruptcy.

The bankruptcy court held a four-day trial and thereafter issued an order and a judgment that dismissed all the claims with prejudice. Cocoma and Cusco appealed the bankruptcy court's decision to the BAP, which affirmed.

## II. Standard of Review

"Although this is an appeal from a BAP decision, we review only the [b]ankruptcy [c]ourt's decision." *Rebein v. Cornerstone Creek Partners, LLC (In re Expert S. Tulsa, LLC)*, 842 F.3d 1293, 1296 (10th Cir. 2016) (internal quotation marks and citation omitted). "We treat the BAP as a subordinate appellate tribunal whose rulings may be persuasive but are not entitled to deference. Matters of law are reviewed de novo, and factual findings (which are made only by the bankruptcy court, not by the BAP) are reviewed for clear error." *Id.*

4

## III. Discussion

Cocoma and Cusco contend on appeal that the bankruptcy court erred in (1) dismissing their conversion claims against the Debtor; and (2) denying their claim for a declaration that the debts resulting from the conversion claims are not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(6).

### A. Conversion

All relevant activity took place in Illinois, and the parties agree that Illinois law applies to the conversion claims. Under Illinois law:

> To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.

*Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008) (internal quotation marks omitted). These things must be proven by a preponderance of the evidence. *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 806 N.E.2d 280, 285 (Ill. App. Ct. 2004).

#### 1. Conversion of the Tenant Improvement Reimbursement Check

With respect to the impoundment of the tenant improvement reimbursement check from the title company, the bankruptcy court found that "it was Dr. Nigam, acting on behalf of Summit, who took this action, not the Debtor. [The Debtor] had no input into this decision, nor did she carry out this act." Aplts. App. Vol. III at 686. Cocoma and Cusco have cited no evidence in the record to the contrary or that undermines the bankruptcy court's findings in any way. Thus, their claim of

5

conversion based on Dr. Nigam's seizure of the tenant improvement reimbursement check must fail.

## 2. Conversion of the Inventory

### a. *Wrongful Control*

With respect to the seizure of Cusco's inventory, the bankruptcy court likewise found that "it was Dr. Nigam, and not the Debtor, who directed and took these actions on Summit's behalf. The Debtor had no direct involvement in . . . the seizure of inventory." Aplts. App. Vol. III at 686. The bankruptcy court further observed that it was Summit, and not the Debtor, who retained the inventory following its initial seizure.[2] Indeed, Cocoma and Cusco no longer argue that the Debtor committed conversion in her personal capacity. Instead, they argue that "Summit . . . ended up converting the [i]nventory." Aplts. Reply Br. at 7.

The bankruptcy court found that "the law allowed Summit to continue . . . to withhold the inventory." Aplts. App. Vol. III at 689. The record supports this finding, which undermines any argument that the Debtor's or Summit's continued holding of the inventory was wrongful and without authorization.[3]

---

[2] The bankruptcy court found that a portion of the inventory was taken by Dr. Nigam. Cocoma and Cusco do not argue that the Debtor is liable for Dr. Nigam's actions with respect to that portion.

[3] As a result, we need not address the argument that the Debtor is liable for her participation in Summit's alleged conversion. We note, however, that Illinois law precludes such participatory liability for principals of limited liability companies. *See* 805 Ill. Comp. Stat. 180/10-10.

b. *Illegal Disposition*

Cocoma and Cusco contend that the Debtor is liable for conversion due to the loss of Cusco's inventory following the foreclosure sale of A Perryville Place, the building where the inventory was stored. In support of this argument, they cite *Sheetz v. Baker*, 38 Ill. App. 349, 354 (1890), for the proposition that "[i]t is regarded as a wrongful conversion of the property for a landlord to take it into possession by virtue of his [distress-for-rent] warrant and afterward to illegally dispose of it."

Cocoma and Cusco concede that the Debtor did not dispose of the inventory in her personal capacity. Instead, they aver that it was the landlord, Summit, who "lost control of the inventory." Aplts. Reply Br. at 7. Cocoma and Cusco also have not challenged the bankruptcy court's finding that it was the purchaser of A Perryville Place who removed the inventory (and not Summit or the Debtor). Nor have they explained why the purchaser's disposition was illegal in light of the state court order that authorized the purchaser to dispose of the inventory. Accordingly, their argument based on *Sheetz v. Baker* lacks merit.

## B. Discharge

Section 523(a)(6) provides that an individual debtor does not receive a discharge under 11 U.S.C. § 727 from debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). This section "pertains to 'only acts done with the actual intent to cause injury,' and 'non-dischargeability takes a deliberate or intentional *injury* not merely . . . a deliberate or intentional *act* that leads to injury.'" *Panalis v. Moore (In re Moore)*,

357 F.3d 1125, 1128 (10th Cir. 2004) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). In other words, "to constitute a willful act under § 523(a)(6), the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it." *Id.* at 1129 (internal quotation marks omitted).

The bankruptcy court found that the Debtor did not willfully and maliciously cause injury to Cocoma, Cusco, or their property. The evidence in the record supports the bankruptcy court's findings of fact. Indeed, Cocoma and Cusco do not cite *any* evidence that the Debtor desired to cause any injury or believed that any injury was substantially certain to result from her actions. Thus, the bankruptcy court properly dismissed their claim for an exemption from discharge under § 523(a)(6).

## IV. Motion for Attorneys' Fees on Appeal

The Debtor filed a motion for attorneys' fees on appeal in accordance with Fed. R. App. P. 38. That rule "authorizes a court of appeals to award just damages, including attorney's fees, and single or double costs if the court determines that an appeal is frivolous or brought for purposes of delay." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc). "An appeal is frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." *Id.* (internal quotation marks omitted). Here, Cocoma and Cusco identified gaps in the bankruptcy court's reasoning with respect to their alleged claims. Accordingly, we do not believe that the appeal is frivolous.

## V. Conclusion

The BAP's judgment is affirmed.  The Debtor's motion for attorneys' fees on appeal is denied.

Entered for the Court

Bobby R. Baldock
Circuit Judge