2023 IL App (2d) 220329-U
No. 2-22-0329
Order filed September 25, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CARMINE MANDILE and MARIA MANDILE, | ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 17-CH-703 |
| | ) | |
| VICTOR BASTA, THE BASTA'S CORPORATION, ADELAIDE REAL ESTATE LLC, SALWA BASTA, and NABIL BASTA, | ) ) ) ) ) | |
| | ) | |
| Defendants-Appellants | ) | |
| | ) | Honorable |
| (Unknown Owners and Non-record Claimants, Defendants). | ) ) | Michael J. Chmiel, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

*Held*: The trial court erred in (1) awarding the plaintiffs summary judgment because there remain outstanding questions of material fact; (2) placing the mortgaged property in receivership; (3) awarding pre-receivership rents to the plaintiffs; (4) awarding the plaintiffs damages; (5) denying without a hearing the defendants' motion for discovery sanctions.

¶ 1      This appeal arises out of a foreclosure action filed by the plaintiffs, Carmine and Maria

Mandile, against the defendants, Victor Basta, The Basta's Corporation, Adelaide Real Estate

LLC, and Salwa and Nabil Basta. The plaintiffs sold a commercial property to the defendants and provided financing. In response to the foreclosure action, the defendants raised affirmative defenses and counterclaims that, among other things, sounded in fraud. The parties filed cross-motions for summary judgment. The circuit court of McHenry County awarded summary judgment to the plaintiffs. The defendants appeal from the trial court's award of summary judgment and other related orders. We reverse and remand for additional proceedings.

¶ 2                                    I. BACKGROUND

¶ 3      The following facts are taken from the record and presented in the light most favorable to the defendants. See *Boldini v. Owens Corning*, 318 Ill. App. 3d 1167, 1170 (2001) (in ruling on a motion for summary judgment, all evidence is viewed in the light most favorable to the nonmovant). The plaintiffs owned and operated property at 2160 Lake Cook Road in Algonquin from 1999 until 2016. The property consisted of the primary restaurant tenant (Mandiles restaurant) and three smaller tenant spaces. Prior to August 2016, two of the smaller spaces had been rented to a dry cleaner and a beauty salon. On August 1, 2016, the plaintiffs entered into a lease agreement with Leslie Blanken for a video gaming café to fill the third tenant space at the property. The rent for the Blanken café was to be $2,400 per month. The lease agreement between the plaintiffs and Blanken was conditioned upon Blanken obtaining a liquor license. If a liquor license was denied to Blanken, the lease afforded Blanken the opportunity to void the lease. Blanken did not intend to have a kitchen in her café but instead would purchase all of the food served in the café from Mandiles restaurant.

¶ 4      On September 28, 2016, the plaintiffs entered into a contract with defendants to sell the defendants the restaurant business and the property for $1.375 million. During the negotiations prior to entering the contract, the defendants were informed that the third tenant space had been

rented at the rate of $2,400 per month. Maria Mandile informed the defendants that the new tenant would provide $100,000 of catering business annually to Mandiles restaurant.

¶ 5    On October 25, 2016, the Village of Algonquin denied Blanken's liquor license application. Michael Mandile, the plaintiffs' son, was present at the hearing where Blanken's liquor license application was denied. Following the denial of the application, Michael and Blanken exchanged emails. Michael emailed that "I can say with a possibility if we change [the] plan we can get it done." Blanken responded:

> "However the gaming is part of our model . . . if we redo our concept, they want us to have a full kitchen in order to get a liquor license and that will totally defeat our purpose of working with Mandile's and all of a sudden we are a competitor. It was supposed to offer entertainment to draw people to that side of town and be beneficial to both of us. Not to mention they will never agree on gaming for that space because all of a sudden it's to [sic] small? The size has never changed from our initial discussions nor has our concept. So, the bottom line is they flipped on us and completely f*** us over."

Blanken never re-entered the café after her application for a liquor license was denied.

¶ 6    On November 29, 2016, the plaintiffs and defendants signed a purchase and mortgage agreement. The defendants executed a promissory note for $1 million. The mortgage agreement required the defendants to make monthly payments of $6,326 until December 1, 2023. The plaintiffs and some of the defendants also signed a collateral assignment of rents. One of the tenants listed in the assignment was Blanken's café.

¶ 7    On December 7, 2016, Blanken informed the defendants that she was terminating her lease because her café had not been approved for a liquor license.

¶ 8    The defendants continued making their monthly mortgage payments to the plaintiffs until they learned that Michael Mandile had been present at the hearing where Algonquin had denied Blanken's application for a liquor license. The defendants stopped making payments as of July 1, 2017.

¶ 9    On September 20, 2017, the plaintiffs filed a complaint to foreclose the mortgage on the property. On October 27, 2017, they filed a petition for the appointment of a receiver for the property.

¶ 10    On November 2, 2017, the defendants filed their answer and raised several affirmative defenses. The defendants asserted that the plaintiffs knew that Blanken was not going to proceed with her lease, but they withheld that material information from them. Alternatively, the defendants argued that the purchase agreement should be invalidated on the basis of mistake because they would not have purchased the property had they known that Blanken was not going to be a tenant.

¶ 11    On November 21, 2017, the plaintiffs filed an amended complaint.

¶ 12    On April 4, 2018, the trial court appointed a receiver. The rents that were paid by the other tenants at the property were paid over to the receiver.

¶ 13    On March 19, 2020, the parties filed cross-motions for summary judgment.

¶ 14    On April 16, 2021, the trial court granted the plaintiffs' motion for summary judgment and entered an order for judgment of foreclosure and sale. The trial court denied the defendants' motion for summary judgment. The trial court found that the "case simply involves a commercial foreclosure of modest demographics, with a singular piece of real estate and three leaseholds, and allegations of misrepresentations concerning one of the leaseholds." The trial court explained that "[t]he terms of that arrangement were transparent, available to the [d]efendants through their due

diligence, and not hidden from them." The trial court concluded that the "record of th[e] case was devoid of facts sufficient to grant the [d]efendants the relief they seek" as "nothing of substance" supported their allegations against the plaintiffs. The defendants thereafter filed a timely notice of appeal.

¶ 15   On October 16, 2021, the parties entered into an agreement under which the plaintiffs received a deed in lieu of foreclosure for the property and the defendants released any claim to the property and no longer sought return of the property. Following the execution of that agreement, the only remaining issue was as to damages.

¶ 16   On March 30, 2022, this court dismissed the defendants' appeal for lack of jurisdiction because the trial court had not entered a final order calculating the damages owed to the plaintiffs. *Mandile v. Basta*, No. 2-21-0240 (2022) (unpublished order under Supreme Court Rule 23). On August 31, 2022, the trial court entered a final order as to damages. The defendants filed a timely notice of appeal from that order.

¶ 17                                    II. ANALYSIS

¶ 18          A. Trial Court's Award of Summary Judgment to the Plaintiffs

¶ 19   On appeal, the defendants argue that the trial court erred in granting summary judgment in favor of the plaintiffs. Specifically, the defendants argue that the trial court ignored the existence of a material question of fact and made an impermissible finding of fact in favor of the plaintiffs. The defendants contend that the trial court erred in determining that they should have uncovered any false statement by the plaintiffs in their due diligence, rather than concluding that the plaintiffs should not have made a false statement in the first place.

¶ 20   The purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists (*People ex rel. Barsanti v. Scarpelli*, 371 Ill. App. 3d 226, 231 (2007)), and such

a motion should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" (735 ILCS 5/2-1005(c) (West 2022)). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment is incorrect as a matter of law. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997). We review *de novo* the trial court's grant of a motion for summary judgment. *AUI Construction Group, LLC v. Vaessen*, 2016 IL App (2d) 160009, ¶ 16.

¶ 21 A mortgagee may foreclose on its interest in real property upon default of a condition in the instrument. *PNC BANK, N.A. v. Zubel*, 2014 IL App (1st) 130976, ¶ 18. To establish a *prima facie* case of foreclosure in accordance with section 15-1504, a plaintiff is required to introduce evidence of the mortgage and promissory note, at which time the burden of proof shifts to the defendant to prove any affirmative defenses. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 67.

¶ 22 An affirmative defense is one in which defendant gives color to his opponent's claim but asserts a new matter which defeats an apparent right in the plaintiff. *Raprager v. Allstate Insurance Co.*, 183 Ill. App. 3d 847, 854 (1989). In reviewing the sufficiency of an affirmative defense, this court disregards any conclusions of fact or law not supported by allegations of specific fact. *Northbrook Bank & Trust Co. v. 2120 Division Ltd. Liability Co.*, 2015 IL App (1st) 133426, ¶ 15.

¶ 23 The affirmative defense of fraudulent misrepresentation requires that a plaintiff allege that (1) defendant made a false statement of material fact; (2) known or believed to be false by the defendant; (3) intent by the defendant to induce the other party to act; (4) action by plaintiff in reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Roe v. Jewish Children's Bureau*, 339 Ill. App. 3d 119, 131 (2003). A claim for fraud must allege

with specificity and particularity facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496-97 (1996).

¶ 24 The defendants' allegations sufficiently raise the affirmative defense of fraudulent misrepresentation. The defendants' allegations of fraud are premised on that the plaintiffs knew that Blanken would not be continuing with her lease after Algonquin denied her application for a liquor license, but they continued to represent to the defendants that she would. This misrepresentation was material because Maria Mandile had told the defendants that Blanken's café would be purchasing its food from the restaurant that the defendants were purchasing. As such, that would generate $100,000 in revenue for the defendants, which would exceed the amount of the defendants' annual mortgage payments.

¶ 25 The defendants allege that the plaintiffs knowingly deceived the defendants so that the defendants would proceed with the purchase of the commercial lot which was less valuable than advertised because it was not going to be fully leased. The defendants relied on these representations as they proceeded with the purchase of the commercial property.

¶ 26 The plaintiffs insist that the defendants' reliance was not justifiable because they could have discovered everything they needed to through their due diligence of reviewing all of the documents connected to the sale, including Blanken's lease. They also argue that they could have learned of Algonquin's denial of Blanken's liquor application because it is a matter of public record.

¶ 27 Although the question of whether a plaintiff's reliance was reasonable is usually a question of fact, where it is apparent from the undisputed facts that only one conclusion can be drawn, the

question becomes one for the court. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1018 (2007). In order to determine whether there was justifiable reliance on the part of a plaintiff, "it is necessary to consider all of the facts within a plaintiff's actual knowledge as well as those that he could have discovered by the exercise of ordinary prudence." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 575 (1998). A person may not enter a transaction with his eyes closed to available information and then charge that he has been deceived by another. *Kopley*, 376 Ill. App. 3d at 1018. "If ample opportunity existed to discover the truth, then reliance is not justified." *Neptuno*, 295 Ill. App. 3d at 575. If a plaintiff's reliance is unreasonable in light of the information available, the loss is considered the plaintiff's own responsibility. *Kopley*, 376 Ill. App. 3d at 1019.

¶ 28    As the Illinois Supreme Court long ago explained:

> "The rule is well established that a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations." *Schmidt v. Landfield*, 20 Ill. 2d 89, 94 (1960).

¶ 29    Here, even if the defendants had access to Blanken's lease and were aware of the results of the hearing on her application for a liquor license, they would not have known of the October 26, 2016, emails between Michael and Blanken that indicated Blanken did not intend to proceed with the lease. As such, even by exercising due diligence, the defendants did not have the opportunity to discover this material information that would have impacted their decision to purchase the property. See *Kopley*, 376 Ill. App. 3d at 1018-19.

¶ 30    Accordingly, the trial court erred in granting summary judgment as factual questions remain regarding the defendants' affirmative defense of fraudulent misrepresentation. We therefore need not consider the defendants' other affirmative defenses and alternate bases to deny the plaintiffs' motion for summary judgment.

¶ 31    In so ruling, we also reject the defendant's argument that summary judgment should have been granted in their favor. The plaintiffs do not concede that Maria Mandile represented to the defendants that Blanken's lease would generate $100,000 for Mandiles restaurant. Absent that statement, there is a question of whether Blanken's lease was material to the purchase of the property. Further, the plaintiffs insist that they were not aware that Blanken intended to terminate her lease. These questions of fact are to be resolved by the trier of fact, not on a motion for summary judgment.

¶ 32                    B. Trial Court's Appointment of a Receiver

¶ 33    The defendants' second contention on appeal is that the trial court erred in granting the plaintiff's motion for a receivership. Under section 15-1701(f) of the Foreclosure Law (735 ILCS 15-1701(f) (West 2022)), a receiver for mortgaged real estate may only be appointed "in accordance with" that section by showing that the plaintiff is entitled to possession under subsection 15-1701(b)(2) (*id.* § 15-1701(b)(2)). Pursuant to section 15-1701(b)(2), "in mortgage foreclosure cases involving nonresidential real estate, a mortgagee is entitled to be placed in possession of the property prior to the entry of a judgment of foreclosure upon request, provided that the mortgagee shows (1) that the mortgage or other written instrument authorizes such possession and (2) that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause. However, if the mortgagor objects and demonstrates 'good cause,' the court shall allow the mortgagor to remain in possession." *Bank of America v. 108 N. State Retail LLC*,

401 Ill. App. 3d 158, 164 (2010) (quoting 735 ILCS 5/15-1701(b)(2) (West 2006)). The Foreclosure Law thus "creates a presumption in favor of the mortgagee's right to possession of nonresidential property during the pendency of a mortgage foreclosure proceeding [citations], and a mortgagor can retain possession only if it can show 'good cause' for permitting it to do so." *Id.*

¶ 34 We note that the Foreclosure Law uses the term "and" between the two prongs of section 15-1701(b)(2). 735 ILCS 5/15-1701(b)(2) (West 2020). While use of the word "and" between two statutory elements generally indicates that both elements must be satisfied—that the statute must be read conjunctively—our supreme court has recognized that "and" is often used interchangeably with the generally disjunctive "or," with the meaning being determined by context. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 606 (2008). Thus, if reading "and" in a statute literally would create an inconsistency in the statute or render the sense of the statute dubious, then the term "and" will be read as "or." *Martin v. Office of State's Attorney of Cook County*, 2011 IL App (1st) 102718, ¶ 11.

¶ 35 We believe that the term "and" in section 15-1701(b)(2) of the Foreclosure law is properly read in the conjunctive. Thus, to be allowed to gain possession of the defendants' property through a receivership, the plaintiffs had to establish both prongs of section 15-1701(b)(2). As discussed earlier, there is a question of fact as to whether the defendants raised a valid defense of fraudulent misrepresentation as to the plaintiffs' complaint for foreclosure. Thus, we cannot say that the plaintiffs satisfied the second prong of section 15-701(b)(2) that there was "a reasonable probability" that they would prevail at trial on their complaint. The trial court therefore erred in placing the property in receivership.

¶ 36 C. Rent Money Collected Prior to the Appointment of Receivership

¶ 37    In January 2018, after the commencement of litigation, but prior to the appointment of a receiver, the other two remaining tenants' rent payments were placed in an escrow account. Those payments were for January to March 2018. The receiver was appointed in April 2018. The trial court subsequently granted the plaintiffs' motion to allow the receiver to collect those rents. The defendants contend that the trial court erred in ordering them to turn over pre-receivership rents to the receiver.

¶ 38    Generally, a mortgagor/debtor, as the party in possession and owner of a statutory right of redemption, is entitled to any rents generated from the property as long as the mortgagor retains possession, without having to account for them to the mortgagee/lender. *U.S. Bank National Ass'n v. Randhurst Crossing LLC*, 2018 IL App (1st) 170348, ¶ 48. The plaintiffs present no reason why we should depart from that rule. Accordingly, we determine that the trial court erred in ordering the pre-receivership rents be turned over to the receiver. See *id.*

¶ 39                                   D. Award of Damages

¶ 40    The defendants next argue that we should vacate the trial court's award of damages as arbitrary and not based on the evidence. As we have determined that summary judgment in the plaintiffs' favor was improper, any discussion of damages is necessarily premature. We therefore need not address this issue. See *Weber v. St. Paul Fire & Marine Insurance Co.*, 251 Ill. App. 3d 371, 372-73 (1993) (court will not address an issue that is premature and not ripe for adjudication).

¶ 41                                   E. Discovery Sanctions

¶ 42    The defendants' final contention on appeal is that the trial court erred in not awarding them sanctions for the plaintiffs' discovery violations. Alternatively, due to those discovery violations, the defendants argue that the trial court should have reduced the attorney fees that were awarded to the plaintiffs.

¶ 43    Over approximately 14 months in 2018 and 2019, the defendants filed three motions to compel written discovery and for sanctions. The trial court did not address the first motion. The trial court granted the second motion and awarded the defendants $2,000 in sanctions. The trial court did not conduct a hearing on the third motion. Rather, on August 30, 2022, after we remanded the cause for a ruling on damages, the trial court indicated that it had resolved the motion in April 2021 when it granted the plaintiffs' motion for summary judgment. The trial court explained that it believed both parties were responsible for the delay.

¶ 44    Supreme Court Rule 219 specifies the consequences for a litigant's refusal to comply with the rules or court orders regarding discovery. Ill. S. Ct. R. 219 (eff. July 1, 2002). Supreme Court Rule 219(c) empowers the trial court to enter sanctions, including monetary sanctions. *Id.* The imposition of sanctions for the failure to comply with discovery lies in the trial court's discretion. *Bill Marek's The Competitive Edge, Inc. v. Mickelson Grp., Inc.*, 346 Ill. App. 3d 996, 1008, (2004). The trial court's decision in fashioning such a remedy will not be reversed absent a clear abuse of discretion. *Id.*

¶ 45    The trial court's determination that both parties were responsible for the discovery delays is not supported by the record. Indeed, the trial court's determination contradicts its earlier finding that the defendants' second motion to compel discovery and impose sanctions on the plaintiffs was warranted. As the trial court made its finding without a hearing and after three years had passed since the defendants filed their third motion to compel and for sanctions, we believe the appropriate remedy is to remand this issue so the trial court can conduct a hearing on the defendants' third motion to compel and for sanctions.

¶ 46                                III. CONCLUSION

¶ 47    For the foregoing reasons, we reverse the trial court's order (1) awarding summary judgment to the plaintiffs; (2) placing the property in receivership; (3) awarding the plaintiffs pre-receivership rents; (4) awarding the plaintiffs damages; and (5) denying the defendants' third motion to compel discovery and for sanctions.

¶ 48    Reversed and remanded with directions.